Harrison Sheet Steel Co., Inc., Plaintiff-Appellee, v. Paul C. Rosenquist, Director of Revenue of Illinois; Richard Y. Rowe, Treasurer of Illinois; and George F. Barrett, Attorney General of Illinois, Defendants-Appellees.

Samuel Parey, Plaintiff-Appellant, v. Harrison Sheet Steel Company, Inc.; Richard J. Lyons, Director of Illinois Revenue Department; Warren E. Wright, State Treasurer of Illinois; and Latham Castle, Attorney General of Illinois, Defendants-Appellees.

Gen. Nos. 47,350, 47,351.

First District, Third Division.

May 7, 1958.

Rehearings denied June 5, 1958.

Released for publication July 18, 1958.

John D. Vosnos, of Chicago, for Samuel Parey, appellant.

Leonard H. Lawrence, of Chicago, for defendant-appellee.

Latham Castle, Attorney General of State of Illinois (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, Assistant Attorneys General, of counsel) for State Officials.

PRESIDING JUSTICE BURKE delivered the opinion of the court.

Harrison Sheet Steel Company, a corporation engaged in the business of fabricating base cabinets, cabinet sinks, wall cabinets and radiator enclosures (hereinafter called the defendant) having paid the Illinois Retailers' Occupation Tax under protest, and having secured a timely injunction restraining the payment of that fund by the Director of Revenue into the general revenues of the state, obtained a decree declaring that the articles it manufactured and sold were built upon special order, were peculiarly adapted to its customers' requirements and had no resale value, wherefore their sale did not measure the Illinois Retailers' Occupation Tax, and directing refunds of the taxes paid under protest in the sum of $41,810.45. That decree is not challenged. Samuel Parey, one of the customers of defendant, filed his suit in chancery one week prior to the entry of the decree in defendant's suit, naming as defendants the taxpayer (de-

17

fendant) and all of the defendants in the first suit, namely, the Attorney General, State Treasurer and Director of Revenue. Parey filed his complaint on behalf of himself and other customers of the defendant likewise situated as payers of sales taxes on purchases from the defendant and "exacted" by defendant. Plaintiff alleged that no part of the "exacted sales tax" paid into the "Protest Fund" was borne by the defendant; that the refund of the "Protest Fund" should not enrich the defendant; and that the fund in equity and good conscience belongs to the customers from whom the tax had been "exacted." Plaintiff's motion to consolidate the original complaint and the second complaint was denied and defendant's motion to dismiss the second complaint with prejudice was allowed. Plaintiff appealed to the Supreme Court from both orders where the appeals were consolidated and transferred to this court.

The Attorney General, for the state officers, asserts that it is the clear public policy of Illinois that a taxpayer under the Retailers' Occupation Tax Act who has passed the tax on to his customers, if entitled to a refund at all, is entitled only to such refund as trustee for his customers, and that where it appears that the taxpayer does not recognize the trust, equity should direct the refund of the tax to be made directly to the customers, appointing a receiver or other disbursing functionary for that purpose. The Attorney General apparently feels that the "public policy" is declared in the amendment of Section 6 of the Retailers' Occupation Tax (Par. 445, Ch. 120, Ill. Rev. Stat. 1955), providing that persons who have paid a tax which was not due under the provisions of the act, whether as a result of a mistake of fact or an error of law, may file a claim with the Department of Revenue for the issuance of a credit memorandum in the amount of such tax or any penalty thereon, and the

18

department is required to issue a credit memorandum against any tax or penalty due or to become due under the act from the person who made the erroneous payment, provided the claim is filed within the time and in the manner specified in the act, with the further limitation that no claim for credit will be allowed unless the claimant is able to show that he bore the burden of the tax and has not been relieved thereof nor reimbursed therefor, or that he has repaid unconditionally such amount to his vendee who bore the burden of the tax either originally or by repayment to the person who did not bear the burden of the tax. Section 6, as amended, sets out the conditions to be met in order to obtain credit for a tax paid under a mistake of fact or an error of law. We cannot agree with the Attorney General that the language of this section discloses a public policy that the Retailers' Occupation Tax passed on to the customers of the retailer by inclusion in the sale price, when refunded, is held by the retailer as a trustee for the customers. Section 6 goes no further than to provide for the issuance of a credit memorandum under certain conditions. It does not affect the law of sales.

██ The case of Winter v. Barrett, 352 Ill. 441, holds that the tax is imposed upon persons engaged in the business of selling tangible personal property at retail. They are the persons who are required to pay the tax. They are not made the agents of the state to collect the tax as imposed upon them and they are the ones who are required to pay it. They are neither required to take nor prohibited from taking into consideration the amount of tax to be paid by them in fixing the selling price of articles sold. They must pay the tax. The General Assembly had in mind that persons engaged in business would, in fixing the price of articles sold by them, take into consideration the tax to be paid under the act, the same as they do their

property tax, rent and other expenses of doing business. The court said that the price charged for articles sold is merely the measure of the tax to be paid. The act does not prevent retailers from taking into consideration the tax to be paid by them under the act in fixing the price of articles and commodities sold to the customer. A retailer is not required to absorb the tax and he may pass the burden of the tax on to the consumer by increasing the price of the property sold by him.

In Vause & Striegel, Inc. v. McKibben, 379 Ill. 169, the plaintiffs contended that the "selling price" or the "amount of a sale" may be determined with a deduction for an additional sum to cover the Retailers' Occupation Tax where it is collected as a tax. The court said that the obvious meaning of the expression "any other expense whatsoever" precludes the deduction which plaintiffs sought to make in determining their selling price for tax purposes. The court said (173):

"Conceding that retailers and their customers, in some transactions, as disclosed by the stipulated facts, make a distinction between (1) the money paid for the property transferred and (2) the added charge on account of the retailers' occupation tax, the concession cannot aid them until and unless the legislature makes the same distinction. The mere fact that the retailer and the consumer may, by a particular form of billing, denominate the three cents additional charge in one instance a tax and in another a part of the selling price is not decisive. Manifestly, the State cannot be deprived of the tax upon the actual selling price irrespective of the form of invoice agreed upon by a retailer and the purchaser from him. Again, so far as the consumer is concerned, the selling price is $1.03, irrespective of the manner of bookkeeping. If a retailer elects to add the three cents exacted of him by the law to the original selling price of $1.00 he is not

20

in a position to complain when the State demands that he pay a tax on the amount actually received by him from the consumer, namely, $1.03."

In the latter case the Supreme Court discussed the amendment to Section 2 of the statute (Par. 441, Ch. 120, Ill. Rev. Stat., 1941) effective July 1, 1941, which reduced the rate of tax from three per cent of the gross receipts to two per cent of 98 per cent of the gross receipts from sales after June 30, 1941. In answer to plaintiff's contention that the amendment reveals the intention of the legislature to exempt the additional sum from gross receipts, the court said (175):

"The argument is advanced that this change demonstrates the 'selling price' does not and was never intended to, include the tax reimbursement item demanded and received by plaintiffs from their customers. An equally tenable argument is that the change conclusively reflects an intent to change the definition of 'selling price.' In any event, section 2, as recently amended, changes the rate and not the basis, including the additional charge, upon which the rate is to be computed."

Section 2 of the Retailers' Occupation Tax in effect at the present time states that a tax is imposed "upon persons engaged in the business of selling tangible personal property at retail at the rate of 2 per cent of 98 per cent of the gross receipts from such sales of tangible property made in the course of business after June 30, 1941, and prior to July 1, 1955, and 2½ per cent of the gross receipts from such sales after June 30, 1955." Under Sec. 23.111 of the Cities and Villages Act the corporate authorities of a municipality may impose a tax upon all persons engaged in the business of selling tangible personal property at retail in the municipality at a rate of not to exceed ½ of 1 per cent of the gross receipts from such sales made in the

21

course of such business, the tax to be collected by the Department of Revenue.

In Svithiod Singing Club v. McKibben, 381 Ill. 194, the court said (197): "It is settled that the tax so imposed is an occupation tax upon a class of vendors described in the act, and not a tax upon sales, though it is measured by the gross receipts from sales." See also Peoples Drug Shop, Inc. v. Moysey, 384 Ill. 283; Crerar Clinch Coal Co. v. Board of Education, 13 Ill.App.2d 208. Plaintiff and others in a similar position whom he seeks to represent did not pay a tax to the defendant. They paid the agreed price. The contract with each customer was performed. There was no overpayment. The defendant was the taxpayer. Hence, the plaintiff and those he seeks to represent have no interest in the refund directed by the decree to be paid to the defendant and are without standing.

The recent opinion by the First Division of this Court in Cohon v. Paris, 17 Ill.App.2d 21, presents a somewhat different factual situation than the case at bar. It relies strongly on Wayne County Produce Co. v. Duffy-Mott Co., Inc., 244 N. Y. 351, 155 N. E. 669, an opinion by the Court of Appeals of New York, speaking through Mr. Justice Cardozo. In that case plaintiff bought from defendant large quantities of sweet cider. The price was to be 14½ cents per gallon, subject to a stated discount, plus the manufacturer's war tax of 10 per cent which was to be paid in full without discount. Defendant, the manufacturer, after collecting the amount of the tax from the plaintiff, paid it over to the federal government. In 1922 came a ruling of the courts that sales of sweet cider were not subject to any tax whatever. The Treasury Department and manufacturers generally had misconstrued an act of Congress whereby a tax of 10 per cent was levied upon sales of unfermented grape juice and "other soft drinks." Defendant de-

22

manded and obtained a refund of the tax thus unlawfully collected. The court, in deciding that the plaintiff must prevail, said (669):

"This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case, the buyer is without remedy, though the annulment of the tax may increase the profit to the seller. Moore v. Des Arts, 1 N. Y. 359. This is a case where the promise of the buyer is to pay a stated price, and to put the seller in funds for the payment of a tax besides. In such a case the failure of the tax reduces to an equivalent extent the obligation of the promise. The form of the transaction was not thoughtless or accidental. It was deliberate and purposed. The end to be served is conceded in the briefs of counsel. If a sum equal to 10 per cent of the quoted price per gallon had been added to the price as something to be paid at all events, a tax would have been due upon the sum so added as well as upon the residue. A form was adopted whereby the manufacturer was in a position to account to the government at the quoted rate per gallon, and to pay the tax with the excess. The defendant had the benefit of the transaction as thus moulded in its dealings with the government. It is now attempting to set upon the transaction the impress of another quality in its dealings with the plaintiff. We find no evidence in the record to justify the change of front. The quality impressed at the beginning persists until the end."

The promise of the buyer in the latter case was to pay a stated price per gallon and to put the seller in funds for the payment of a tax besides, and a form was adopted to effectuate the promise. In the instant case the tax is upon the occupation of the seller, measured by its receipts from sales. A photostatic copy of the invoice evidencing the transaction between the individual plaintiff and the defendant shows the sale of

a radiator cabinet for "Unit price of $57, 3 per cent tax $1.71, total $58.71, deposit $10, balance $48.71, C. O. D. $48.71. Paid." The sale price was $58.71. The plaintiff recognized that he owed a balance of $48.71 which he paid. At the time of the transaction the plaintiff and all others similarly situated were required to take notice of the law that the Retailers Occupation Tax was a tax upon the occupation of the seller, measured by his receipts from sales, and not a tax upon them. The reasoning of the Wayne County Produce case does not support the position of the plaintiff under the factual situation in the case at bar.

It is unnecessary to extend the opinion by discussing the other points argued in the briefs. For the reasons stated the orders and decrees of the Circuit Court are affirmed.

Orders and decrees affirmed.

FRIEND and BRYANT, JJ., concur.