RUSSELL B. JOHNSON, Plaintiff

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant

Civil No. 325-1973

District Court of the Virgin Islands

Div. of St. Croix

December 3, 1973

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, V.I.,
*for plaintiff*

BRYANT, COSTELLO & BURKE, ESQS., Christiansted, St.
Croix, V.I., *for defendant*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND JUDGMENT

This appeal puts at issue the legality of passing on to the consumer the gross receipts tax levied pursuant to 33 V.I.C. §§ 43 et seq. The question is one of distinct importance, as evidenced by the lack of agreement among the Judges of the Municipal Court.

### I. FACTS

The dispute in this matter arose from the lease of certain office equipment by plaintiff-appellee Russell B. Johnson (hereinafter referred to as "Johnson") from defendant-appellant International Business Machines Corporation (hereinafter referred to as "IBM"). In these lease agreements, IBM contractually provided that Johnson pay to it, in addition to standard charges, "amounts equal to any taxes, however designated, levied or based on such lease charge. . . ." On the strength of this provision, IBM added 2% (the rate of the Virgin Islands gross receipts tax, 33 V.I.C. § 43) to the amounts invoiced to Johnson pursuant to the lease agreements.[1] This surcharge amounted to $412.37. Johnson paid this surcharge under duress and, by filing his complaint in the Municipal Court, he sought to recover such payment in the second count of the complaint. IBM moved for summary judgment in its favor on the second count. Municipal Court Judge John Marsh chose to treat IBM's motion as a motion to dismiss the second cause and, as such, denied the motion in a Pretrial Order dated March 2, 1973. In Judge Marsh's final judgment as to all causes of actions in the complaint, he rendered a judgment against Johnson and in favor of IBM in the sum of $1,530, which sum represents the account between Johnson and IBM after deducting the gross receipts tax add-on of $412.37. The appeal in this case concerns only the

---

[1] As will be seen later, Johnson, under the aforementioned contractual language, was actually obligated to pay rather more than 2%. See p. 299 infra.

Pretrial Order of March 2, 1973, and Judge Marsh's opinion that the pass-on to Johnson of the 2% gross receipts tax violates public policy and is impermissible.

## II. THE DECISION BELOW

In his Pretrial Order of March 2, 1973, Judge Marsh held the contractual pass-on by IBM to Johnson to be violative of Virgin Islands public policy. Although citing no cases or statutory language to support his position, Judge Marsh stated:

> The gross receipts tax under 33 V.I.C. § 43 is imposed upon those furnishing goods and services and not upon the consumer. In this respect, it differs from a retail sales tax in that it affects the ultimate consumer only indirectly. It is in the nature of a hidden tax insofar as the consumer is concerned. For this reason it appears that it was the intent and policy of the Legislature to confine imposition of the tax to the one selling the goods or services. To permit the seller to transfer the imposition of the tax to the ultimate consumer would defeat this policy and intent and thus be contrary to public policy.

Judge Marsh also expressed the view that accurate collection of a tax, if passed on, would prove to be "a virtual mathematical impossibility." As will be developed more fully in this Opinion, I respectfully disagree with my brother Judge Marsh on this latter proposition. But, more importantly, I disagree with him on his construction of the statute, his view of legislative intent and public policy, and, finally, with his distinction between a sales tax and a gross receipts tax. Before I explain my reasons for these disagreements, however, let me review briefly the rather sparse prior law of the Virgin Islands on the issue here presented.

## III. PRIOR LAW

Counsel for IBM, in two long and scholarly briefs, has relied much on two earlier Virgin Islands cases. A perusal

of these two cases, however, reveals that they are not dispositive, and that the issue before me, to the best of my knowledge, is one of first impression.

The case most relied upon by IBM is that of Creque v. Shulterbrandt, 3 V.I. 39, 121 F.Supp. 448 (D.C.V.I. 1954). Decided in Creque was the validity of an attachment under the Trade Tax Law of 1953, Bill No. 264, approved July 6, 1953. Plaintiff had been assessed a 10% tax on certain automobiles he had sold. When he failed to pay, the Sheriff had attached his account with the Virgin Islands National Bank. To block this attachment, plaintiff made many arguments, among them that the Trade Tax Law violated due process and was confiscatory. In rejecting these arguments, the Court noted that the Trade Tax Law was "not a tax on the seller or dealer, but on the consumer." 3 V.I. at 51–52. The Court further indicated that the tax would not be confiscatory in either the alternative that the tax was surcharged to the price or that the price was raised to the amount of the tax. While this language clearly indicates that a pass-on would not be considered judicially troublesome, I do not find this indication particularly relevant herein. First, the Trade Tax Law was, as the Court noted (and unlike the Gross Receipts Tax), obviously and explicitly aimed at consumers and not at retailers or dealers. Second, it was a *special* tax on only certain items, rather than a general tax, and thus intended to affect those special areas through pass-ons (of one form or another), as well as being a producer of revenue.

The second case relied on by IBM is more easily dealt with. In Hettenger & Co. v. Municipalities of St. Thomas, St. John, and St. Croix, 187 F.2d 774 (3d Cir. 1951), accord, Port Constr. Co. v. Government of the Virgin Islands, 237 F.Supp. 486 (D.C.V.I. 1964) aff'd 359 F.2d 663 (3d Cir. 1966), the Court upheld against challenge the respective gross receipts taxes of those municipalities. How-

ever, I do not read this opinion, or a subsequent one, *supra*, as having anything to say, one way or the other, concerning the validity of a pass-on as a collection means for a gross receipts tax. Therefore, I conclude that the validity of such a pass-on is a matter of first impression, and I will give it that consideration such a matter is due.

## IV. THE RELATIONSHIP BETWEEN A SALES TAX AND A GROSS RECEIPTS TAX

█ Judge Marsh, in the Opinion below, placed some importance on the fact that a gross receipts tax was *not* a sales tax. To the contrary, I find that the bulk of authority holds that, where there is no concomitant sales tax, a gross receipts tax is quite similar to a sales tax. See, e.g., Manila Trading & Supply Co. v. Maddox, 335 F.2d 150 (9th Cir. 1964); Indiana Dept. of State Revenue v. Troy, 274 N.E.2d 302 (Ind. 1971); Standard Oil Co. of Cal. v. State Bd. of Equalization, 42 Cal. Rptr. 543 (1965). The similarity is, of course, enhanced when, as in the Virgin Islands, the gross receipts tax is a general, across-the-board tax rather than a limited, special one.

Given this similarity between a gross receipts and sales tax, at least some jurisdictions have permitted the use of a pass-on as a means of collecting the tax under certain tax schemes. See CCH State Tax Rptr. para. 63-001; P-H State & Local Taxes, All States Unit, para. 92967; cf. 127 A.L.R. 1183 (1940); People v. Herbert's of Los Angeles, Inc., 3 Cal. App.2d 482, 39 P.2d 829 (1935).[2]

To be sure, the result is quite different where a sales tax exists side by side a gross receipts tax. In that case

---

[2] Admittedly, many of these cases construe tax schemes which explicitly place the burden of taxation on the consumer. E.g., Wayne County Prod. Co. v. Duffy Mott Co., 244 N.Y. 351, 155 N.E. 669 (1927) (by implication); Alco Pkg. Corp. v. City of Pittsburgh, (S. Ct. Pa., July 7, 1973); Standard Oil Co. v. Kuntz, 330 F.2d 178 (8th Cir. 1964). It must also be admitted that the precise issue raised here has seldom arisen in other jurisdictions, perhaps because few tax statutes are so poorly and inarticulately drafted as that of the Virgin Islands.

there is good reason to separate the means of collection into consumer assessment and price increases respectively. An excellent example is the Illinois decision, Harrison Sheet Steel Co. v. Rosenquist, 18 Ill. App.2d 16, 151 N.E.2d 462 (1958), where the court stated:

> [The sellers] are the persons who are required to pay the tax. They are not made the agents of the state to collect the tax . . . . They are neither required to take nor prohibited from taking into consideration the amount of tax to be paid by them in fixing the selling price of articles sold . . . . [T]he price charged for articles sold is merely the measure of the tax to be paid . . . . A retailer is not required to absorb the tax and he may pass the burden of the tax on to the consumer by increasing the price of the property sold by him.

Accord, e.g., Rudnick Bros. Inc. v. John A. Johnson & Sons Inc., 173 N.Y.S.2d 15 (Sup. Ct.). But this is not the case here. Unlike Illinois the Virgin Islands has no sales tax, and thus the reasoning of the Illinois court is not so impelling. Furthermore, should the legislature choose in the future to adopt a sales tax scheme, it would then have ample opportunity to bar a pass-on and thus isolate the two tax schemes. In any event, whatever the weight of such authority as Harrison Sheet, I believe that the Virgin Islands tax scheme must be viewed on its own to determine whether the public policies behind it could bar a pass-on.

## V. COMPUTATION

██ Before advancing to the initial issue of public policy, I must dispose of a red herring posed by Judge Marsh's Opinion: the feasibility of computing tax on a pass-on. Judge Marsh's conception of this computation appears to be as follows: the IBM contract required that Johnson pay whatever tax it incurred due to his rentals. However, the Virgin Islands tax is levied upon "all receipts" and thus if Johnson paid only a 2% surcharge, IBM would be liable to the Government (and therefore Johnson to IBM under

the contractual language) for an additional tax on that 2%, and so on, ad infinitum.[3] See State Tax Comm'r v. Quebedeaux Chevrolet, 71 Ariz. 280, 226 P.2d 549 (1951). Judge Marsh unreasonably believes that this infinite series of increments would frustrate collection of the tax. This conclusion is patently wrong for three reasons. First, the computation of the infinite series, under a contract like the IBM-Johnson agreement is the problem of the retailer. IBM merely pays 2% of *all* receipts to the Government of the Virgin Islands. If it wishes to assess Johnson that slight increment over 2% necessary to account for all the tax generated by his business it may do so. In the present case, of course, it simply charged Johnson a simple 2% thus absorbing the increment itself. Second, the problem of computing the infinite or asymptotic series, if anyone were hard put to do it, is mathematically possible by use of a formula that will result in a finite number little different from than that which would be produced by the base interest rate. Thirdly, the apparent difficulty of the asymptotic calculation arises just the same, *even if* a pass-on is disallowed. In that case, a seller must raise his prices to pay for the tax.[4] To do so precisely he would of course have to take into account the same infinite series explained above. The issue of computation, therefore, is quite irrelevant to the determination of the validity of a pass-on.

## VI.  PUBLIC POLICY

■ I now come to the decisive consideration: that of public policy. Its analysis is simple enough. There is no

---

[3] This is of course none other than the most famous of the seven paradoxes of Zeno the Eleatic (not to be confused with the Stoic), albeit in slightly different form.

[4] Needless to say, a seller cannot reasonably be forced to absorb the tax, since the dangers of confiscatory taxation would then become acute, and rise to constitutional proportions. See Alco Pkg. Corp. v. City of Pittsburgh (S. Ct. Pa., July 7, 1973). Indeed, one advantage of allowing a pass-on is that it gives more leeway to a seller, who may for some reason be frozen into his present price structure, to recover his extra costs and thus avoid an unconstitutional, confiscatory situation. Id.

indication in the statute, nor in the legislative history, to my knowledge, which in any way suggests that a pass-on would be banned. True, I might infer or construct reasons why the legislature might not have desired a pass-on.[5] But I am loathe to do so where the legislature itself has been silent.[6] There has been great reliance on the ability of sellers to pass-on their tax, and to strike down the tax now would possibly disrupt many past business transactions, and open the floodgates of litigation. It would be far better, I believe, should the solons in our legislature hall disagree with this Opinion, to amend the Gross Receipts Tax in an explicit and prospective way to outlaw pass-ons.

I am aware that abuses of unfair bargaining positions may arise in the course of pass-on agreements. I am confident, however, that ordinary contract law is sufficient to prevent fraud, coercion, or the misuse of "fine print" in such agreements. See, generally, General Excise Tax Memorandum No. 4 (Hawaii, July 5, 1957); Op.Atty.Gen., Ariz., No. 63–32 (1963).

---

[5] For example, due to reluctance of sellers to raise prices, disallowance of a pass-on might cause sellers to absorb a greater amount of the tax than otherwise, thus lessening the tax burden on consumers. Or the legislature might have been concerned with the psychological effects of the tax: a tax "hidden" in price increases is likely to be far more popular than a tax directly imposed on a consumer through a pass-on. Or the legislature might have been concerned with the possible difference in revenues which banning a pass-on could produce. But there is no indication that any of these concerns occurred to our legislators in their passage of 33 V.I.C. § 43 et seq.

[6] I am aware that many courts have required the legislature to be explicit in permitting a pass-on, thus adopting a presumption contrary to mine. E.g., Warren Trading Post Co. v. Moore, 387 P.2d 809 (10th Cir. 1963); W.S. Libby Co. v. Johnson, 94 A.2d 907 (Me. 1953). The conception of these courts appears to be grounded in agency law: the legislature *must* give the retailer explicit authority to act as its collection agent before it may do so. Harrison Sheet, supra. I believe that these courts would probably limit their doctrine to cases, unlike the present one, where the consumer has no contractual bargaining power. In any event, I reject their view, and here hold that the rules of legislative construction in the Virgin Islands do not require such precision in drafting. Surely, it would be unreasonable to hold the Virgin Islands legislature to as high a standard of drafting as courts have required in more advanced jurisdictions.

## VII. CONCLUSION

In conclusion, given my view of the public policy, or lack of it, expressed in the Gross Receipts Law, and the implications thereof, it becomes ineluctable that there is no basis for holding a pass-on illegal. Therefore, the Judgment below cannot stand.

## ORDER

On the premises considered in the foregoing Memorandum Opinion, it is ORDERED that Judgment and Order of the Municipal Court, as to the issue raised herein, of April 13, 1973, and March 2, 1973, respectively, are REVERSED and the matter is remanded to the Municipal Court for such further action not inconsistent with this Order.