THE PEOPLE OF THE STATE OF NEW YORK ex rel. CONSOLIDATED GINSENG COMPANY OF AMERICA, Relator, *v.* OTTO KELSEY, Comptroller of the State of New York, Respondent.

*License fee — computation of, in the case of a foreign corporation having a paid-up capital stock of $2,000,000, and employing all its capital amounting to $240,000 in the State of New York.*

Where a corporation organized under the laws of the State of South Dakota with a capital stock of $2,000,000, all of which has been issued, but half of which has been returned to the treasury of the corporation, employs all of its capital, amounting to $240,000, in the State of New York, the Comptroller should compute the amount of the license fee payable by the corporation, pursuant to section 181 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1901, chap. 558), on the $240,000 of capital employed by it in the State of New York, and not upon the $2,000,000 of its authorized capital stock.

CERTIORARI issued out of the Supreme Court and attested on the 9th day of July, 1904, directed to Otto Kelsey, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings had in assessing a franchise tax against the relator for the year ending October 31, 1903, and in fixing the amount of its license fee.

The relator is a foreign corporation. It was organized August 25, 1902, pursuant to the laws of the State of South Dakota for the purpose of buying, selling and leasing real estate, raising agricultural products, ginseng, and other medicinal roots and herbs and marketing the same and for other purposes. The capital stock of the relator is $2,000,000, divided into 2,000,000 shares of one dollar each, all of which has been issued, although about one-half thereof

has been returned to the treasury of the company. The relator maintains a legal office in South Dakota but it has no property of any kind or description in that State. It has an office in the city of Buffalo in this State and it employs capital in this State to the extent of $240,000. The capital so employed in this State is all the capital owned by the relator and no business is done by the relator other than with said capital of $240,000 in the State of New York. Prior to April 1, 1904, the Comptroller fixed the relator's license fee at $2,500 and stated the franchise tax against the relator for the year ending October 31, 1903, at $750. On the 1st day of April, 1904, relator made an application to the Comptroller to revise and readjust said account for franchise tax and for license fee, which application was granted and testimony was thereafter taken by and before said Comptroller, and he then determined that the franchise tax should be reduced from $750 to $150 but that the license fee should be affirmed at $2,500. This certiorari is brought to review such determination. The relator did business in the State of New York only a portion of the year ending October 31, 1903.

*Charles W. Tooke*, for the relator.

*Julius M. Mayer*, Attorney-General, and *Horace McGuire*, Deputy Attorney-General, for the respondent.

CHASE, J. :

The only question for our determination is whether the relator's license fee should be computed on its authorized capital stock of $2,000,000 or upon the $240,000 of capital employed by the relator in this State. The license tax on foreign corporations is provided by section 181 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1901, chap. 558). The section is headed "License tax on foreign corporations," and it provides: "Every foreign corporation * * *, authorized to do business under the General Corporation Law, shall pay to the State Treasurer for the use of the State, a license fee of one-eighth of one per centum for the privilege of exercising its corporate franchises, or carrying on its business in such corporate or organized capacity in this State, to be computed upon the basis of the capital stock employed by it within this State during the first year of carrying on its business in this State, and if any year thereafter any such corporation shall employ an increased

amount of its capital stock within this State, the same license fee shall be due and payable upon any such increase.   *   *   *."

The franchise tax on domestic corporations is provided by section 182 of the Tax Law (as amd. by Laws of 1901, chap. 558). By such section the franchise tax on domestic corporations that make and declare a dividend or dividends amounting to six or more than six per cent per annum on the par value of their capital stock is computed "upon the basis of the amount of its capital stock employed within this State." If such dividend or dividends amount to less than six per cent on the par value of said capital stock the tax is computed "upon such portion of the capital stock at par as the amount of capital employed within this State bears to the entire capital of the corporation." If no dividend is made or declared the tax is computed upon "the appraised capital employed within this State."

When the case of *People ex rel. Commercial Cable Co.* v. *Morgan* was in this court (86 App. Div. 577), the relator in that case contended that the amount of capital stock employed within this State is under section 182 of the Tax Law deemed to be such proportion of the capital stock of the corporation as the amount of capital employed within this State bears to the entire capital of the corporation. Such contention of said relator was not sustained in this court. When that case was in the Court of Appeals (178 N. Y. 433) that court in construing the provisions of said section 182 of the Tax Law used the following language: "What, then, is the basis upon which the tax is to be computed? Is it the share stock held by individuals, or is it the capital held by the corporation? The tax is upon the corporation. It would seem to follow that the amount of the tax is to be measured by something that the corporation owns. A franchise stock corporation owns three things: 1. Its capital, existing in money or property. 2. Its surplus, if any. 3. Its franchise. The franchise is the thing taxed, and the tax is ' computed upon the basis of the amount of its capital stock employed within the* State.' The share stock, or, in other words, the paper certificates held and owned by individuals, are not employed within this State. It is the capital represented by such certificates that is so employed. The

* *Sic.*

total share stock of a domestic corporation may be held by non residents, and yet all of its capital may be employed within the State. In such a case there would be absolutely no basis for taxation, unless the capital of the corporation instead of the share stock held by its members is the thing upon which the tax is to be computed. In construing this section of the Corporation Tax Law, the authorized issue of the share stock of a corporation needs to be considered only as fixing the limit beyond which a corporate franchise cannot be taxed in a case where all of the corporate capital is employed within this State. This court has held that the term 'Capital Stock,' as used in statutes similar to the one under consideration means, not share stock, but the property of the corporation contributed by its stockholders or otherwise obtained by it, to the extent required in its charter. (*Williams* v. *West. Union Tel Co.*, 93 N. Y. 162.) The expression 'Capital Stock,' is often loosely used in speech, and sometimes in statutory phraseology, to denote capital and nothing more. (*State* v. *Morristown Fire Assn.*, 23 N. J. L. 195.) In *Burrall* v. *Bushwick R. R. Co.* (75 N. Y. 211) capital stock was defined as 'money or property which is put in a single corporate fund by those who, by subscription therefor, become members of a corporate body.' 'Capital Stock' and 'Capital,' are practically the equivalent of each other when considered as a basis for a franchise tax."

The language so used is applicable to the case now under consideration. It is the latest expression of the courts construing the meaning of the words "capital stock employed within this State" as used in the Tax Law. It is controlling upon us, and it is also in accord with the previous expressions of this court. The license fee should, therefore, have been computed on the sum of $240,000 instead of the sum of $2,000,000. The determination of the Comptroller should be modified by reducing the license fee to $300, and as so modified confirmed, with $50 costs and disbursements to the relator.

All concurred.

Determination of Comptroller modified by reducing the license fee to $300, and as so modified confirmed, with $50 costs and disbursements to the relator.