**HENRY O. CREQUE,**
**Plaintiff**

v.

**LOUIS SHULTERBRANDT, et al.,**
**Defendants**

Civil No. 380

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

May 24, 1954

*See, also, 121 F. Supp. 488*

JORGE RODRIGUEZ, Esq., St. Thomas, Virgin Islands, *for plaintiff*

CYRIL MICHAEL, Esq., U.S. Atty., St. Thomas, Virgin Islands, *for defendants*, SHULTERBRANDT AND CHARLES

MAAS AND BAILEY, St. Thomas, Virgin Islands (DAVID E. MAAS, Esq., of counsel), *for defendant*, WHARTON.

MOORE, *Judge*

This matter came on for hearing February 8, 1954, with plaintiff, Henry O. Creque, represented by Jorge Rodriguez, Esquire, the defendants Louis Shulterbrandt, Commissioner of Finance, and Earle H. Charles, Sheriff, represented by Cyril Michael, Esquire, United States Attorney, and the defendant Albert E. Wharton, President of the Virgin Islands National Bank, represented by Maas and Bailey, David E. Maas, Esquire, of counsel.

This case involves the validity of an attachment of plaintiff's property by the Sheriff under orders from the Commissioner of Finance, acting pursuant to the Trade Tax Law of 1953 Bill No. 264, approved July 6, 1953).

There is no controversy as to the facts which, briefly stated, are as follows: The plaintiff, Henry O. Creque, who is an automobile dealer in this Municipality and who does business under the name of Community Motors, was assessed trade taxes on automobiles sold by him during por-

tions of the years 1952 and 1953, amounting to $12,277.81 in taxes plus $1,517.94 for penalties and interest and making a total of $13,795.75. From time to time, plaintiff was notified of his delinquency and payment demanded. Plaintiff consistently refused or neglected to pay the tax. On October 16 and November 16, 1953, plaintiff was served with final notices of his tax indebtedness and informed that unless immediate payment was made the sheriff would proceed to collect the same as provided for by law. Plaintiff did not pay and on November 19, the Sheriff, pursuant to Order of the Commissioner of Finances in accordance with section 9 of the Trade Tax Law, attached the personal property of plaintiff, to wit: his account in the Virgin Islands National Bank in the name of Henry O. Creque (Community Motors). Upon receipt of a letter from the Sheriff informing him of the attachment of the bank accounts under the names of Henry O. Creque and Community Motors and directing him not to pay any funds therefrom, Albert E. Wharton, President of the Virgin Islands National Bank, ordered payments from the account stopped and informed plaintiff thereof. Plaintiff thereupon filed this action to set aside the order of the Sheriff.

At the pre-trial conference held on February 8, 1954, the parties reduced the issues involved to matters of law and agreed to submit the case on briefs. Plaintiff also stipulated that no damages were being sought against the Virgin Islands National Bank and that, therefore, its attorney need make no further defense.

The plaintiff raised a number of issues of law concerning the validity of the Trade Tax Law and the method of attachment therein provided for. The following are the issues as stipulated by plaintiff at the pre-trial conference and presented in his brief:

(a) That attachment is a judicial process and cannot be made as an administrative process;

44

(b) That attachment is a provisional remedy and not a final remedy;

(c) That the provision in the Trade Tax Law denies to taxpayers the equal protection afforded under the general attachment law of the Virgin Islands as outlined in the Code of Laws;

(d) That the entire Trade Tax Law violates due process of law;

(e) That the Trade Tax Law is confiscatory and usurious;

(f) That while the plaintiff is indebted to the Municipality for trade taxes under the law, if valid, the amount claimed is incorrect;

(g) That the penalties assessed against him in the amount claimed by the Municipality have not been made in accordance with the law.

Plaintiff's first major contention may be summarized as follows: (1) that the remedy of attachment exists only by virtue of statute, and in our jurisdiction is provided for by chapter 14, Title III of the Code of Laws for the Municipality (1921; 5 V.I.C. § 251 et seq.); (2) that under this law of attachment a writ of attachment can be obtained only by judicial process under specific conditions which provides for the protection of the party whose property is attached; and (3) that once established as a judicial function, the legislature, by virtue of section 25 of the Organic Act of 1936 (prc. 1 V.I.C.; 48 U.S.C. § 1405x), cannot take it away from the Courts and make it an administrative process as it attempts to do in the tax statute.

■ ■ Analysis of this contention reveals that, in the first place, the general attachment law of the Municipality does not apply to the case in issue since the Trade Tax Law specifies its own remedy and procedure for collection of delinquent taxes. Nor does it matter what name the legislature gives to the procedure it prescribes, be it "attachment", "seizure", or "distraint", as long as the procedure to be followed is clearly specified and understood. The fact that the Trade Tax Law of 1953 provides for a procedure

which it refers to as attachment does not place the subject of overdue taxes under the general law of attachment, nor does it invoke the safeguards and other provisions of that law.

■ ■ Chapter 14, Title III of the Code of Laws of the Municipality (1921; 5 V.I.C. § 251 et seq.) provides for the remedy of attachment in certain types of cases. Collection of taxes is not specified as within the contemplation of that law, but even if it were, the legislature has the power to provide special or additional remedies in other types of cases as well as in the same types of cases enumerated in the previous law. The legislature has the power to repeal whatever it originally had the power to enact. The legislature, in the Trade Tax Law, not only described the specific procedure to be followed in collecting the trade tax, but provided in section 17 of that law that should any parts of the trade tax law conflict with any other laws of the Municipality, those laws or parts thereof shall be considered repealed. Consequently, the procedure outlined by the statute for the collection of delinquent taxes is the procedure to be followed, whatever it is called, and no other law is applicable to said matter.

The pertinent sections of the Trade Tax Law of 1953 provide as follows:

"Section 8. . . . Any tax imposed by this Ordinance which is not paid by the time required herein shall be deemed delinquent and the taxpayer shall pay, in addition to the tax due, a penalty of five (5) per cent of the amount due, plus interest at the rate of one per cent a month or fraction of a month.

"Section 9. If any person, firm, partnership, company, association, and corporation shall neglect or refuse to pay the trade tax or gross receipts tax within thirty (30) days after written notification by the Commissioner of Finance of delinquency, the Sheriff shall, upon written order of the Commissioner of Finance, proceed to collect the same by the attachment and sale of personal property of such debtor.

"Section 17. All laws or ordinances or parts thereof in conflict with this law are hereby repealed."

 There is no question that the legislature has the power to enact tax statutes and to prescribe therein the procedure for collection and enforcement. By whom, when, and through what procedure or remedy taxes shall be collected is a matter for legislative determination, subject to the rule that the procedure cannot be utterly unreasonable or arbitrary or unequal and unjust in its operation. Gautier v. Ditmar, 204 N.Y. 20, 97 N.E. 464, 51 Am. Jur. 857. That tax statutes may be enforced by summary procedure is, also, no longer open to question. In Phillips v. Com'r of Internal Revenue, 283 U.S. 589, 51 S. Ct. 608, 611, 75 L. Ed. 1289, the U.S. Supreme Court said:

"The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained."

In the case of McMillen v. Anderson, 95 U.S. 37, 40, 24 L. Ed. 335, the Supreme Court had before it a Louisiana statute which provided that when any person shall fail or refuse to pay his license tax, the collector shall give 10 days written notice to the delinquent requiring its payment; and the manner of giving this notice is fully prescribed. If at the expiration of this time the license be not fully paid, the tax collector may without judicial formality, proceed to seize and sell, after 10 days advertisement, the property of the delinquent or so much as may be necessary to pay the tax and costs. The court held this to be a legal mode of proceeding.

Therefore, as to plaintiff's first major contention, it is the opinion of this court that the general law of attachment is in no way applicable to this case; that its provisions have

no bearing on the procedure to be followed in "attachment" as provided for in the Trade Tax Law of 1953. It is, further, the opinion of the Court that it is well within the power of the legislature to vary or modify the remedy of attachment as it applies to different situations and types of cases, provided the procedure the legislature prescribes complies with due process.

Plaintiff's next major contention is that the remedy and procedure provided by the Trade Tax Law denies due process of law.

The attachment made by the Sheriff on the orders of the Commissioner of Finance was made specifically under the authority of Section 9 of the Trade Tax Law quoted above, and it is not contended that the procedure therein outlined was not followed or complied with. It is, however, contended that the procedure as prescribed and followed is a denial of due process of law as required by the Organic Act of the Virgin Islands and the Constitution of the United States.

The United States Attorney argues that the validity of the Trade Tax Law was determined in the case of Hettinger v. Municipality of St. Thomas, 3 Cir., 2 V.I. 509, 187 F.2d 774. In that case the power of the Municipal Legislature to levy the tax was upheld and Hettinger's liability to pay the tax was affirmed. Although the Court of Appeals discussed both of these propositions, it did not discuss the validity of the various provisions of the trade tax law raised herein.

Attachment, as plaintiff points out is a statutory remedy and as such the legislature has the power to determine how the process shall issue. The fact that the legislature initially provided for the issuance of writs of attachment only in cases pending before the courts and that issuance thereof depended upon judicial process or

48

action by the courts, does not mean that the same legislative body cannot at a later date modify that law or provide for attachment in other types of situations or through a different procedure, so long as it complies with due process. The Organic Act (1936; prec. 1 V.I.C.; 48 U.S.C. §§ 1405 - 1406m) does not restrict the legislature in these respects. Attachment was not made a judicial process by the Organic Act but by the legislature, which is, therefore, free to alter or change this remedy and its application as concerns specific matters. The essential requirement is that the statute clearly specify the procedure to be followed and so long as it is not arbitrary and unreasonable the courts cannot substitute their judgment for that of the legislature. 51 Am. Jur. 857.

 Tax statutes may provide, and have provided from earliest times, for summary procedure for the collection of taxes. The procedure does not have to be by judicial process to be due process, but may be administrative and not be a denial of due process provided an opportunity is afforded the taxpayer to be heard and contest the amount of the tax due. Maxwell v. Page, 23 N.M. 356, 168 Pac. 492, 5 A.L.R. 155. Scottish Union & National Ins. Co. v. Bowland, 196 U.S. 611, 25 S. Ct. 345, 49 L. Ed. 619. Such non-judicial and purely administrative remedies as seizure and sale or distraint are traditional remedies in tax statutes and have been held not to divest a citizen of his property without due process of law. Gathwright v. Baltimore, 181 Md. 362, 30 A.2d 252, 145 A.L.R. 590; Kelly v. Pittsburgh, 104 U.S. 78, 26 L. Ed. 658.

 It has long been established that with respect to tax statutes the requirements of due process are sufficiently satisfied if provision is made whereby the taxpayer has "an opportunity to question the validity or the amount of such tax or the assessment, either before that amount

49

is finally determinated or in subsequent proceedings for its collection." Maxwell v. Page, supra.

■ It is a common provision of most tax statutes throughout the United States that payment of taxes may be made under protest with opportunity to contest the validity or amount of the tax within a specific time, and such a procedure is also available to taxpayers of this Municipality through sections 39, 40, and 41, of the Real Property Tax Regulations of 1936 (33 V.I.C. §§ 2521, 2522) which provide as follows:

"Section 39. In all cases in which an officer charged by law with the collection of revenue due the Municipality, shall institute any proceeding or take any steps for the collection of the same, alleged or claimed by such officer to be due from any person, the party against whom the proceedings or steps are taken shall, if he conceives the same to be unjust or illegal or against any statute, pay the same under protest.

"Section 40. Upon his making such payment the Finance Officer shall pay such revenue into the treasury, giving notice at the time of the payment to the Government Secretary that the same was paid under protest.

"Section 41. The party paying said revenue under protest may, at any time within sixty days after making said payment, and not longer thereafter, sue the Government Secretary for said sum, for the recovery thereof in the court having competent jurisdiction thereto; and if it be determined that the same was wrongfully collected the court trying the case may certify of record that the same was wrongfully paid, and ought to be refunded and thereupon the Government Secretary shall repay the same."

Under these provisions every taxpayer has an opportunity to contest the validity of his tax, whatever its nature, whether real property, trade or other tax. Plaintiff could, therefore, in the first instance, have paid under protest the tax in issue and then brought suit in this Court for recovery of all or any part there wrongfully assessed; and after the attachment is made, plaintiff can still chal-

50

lenge the validity or correctness of the tax imposed. The fact that such an opportunity was, and is, available to him sufficiently establishes that he is not being deprived of his property without due process of law. 84 C.J.S., Taxation, § 722, p. 1423.

Plaintiff next contends that the trade tax is both confiscatory and usurious. Confiscatory, in that the tax is imposed on the value of the goods plus carrying charges and plus a ten per cent mark-up, thereby leaving little by way of profit to the importer. Plaintiff also points out that it is required that the trade tax of ten per cent be paid when the goods are received and not when they are sold, and the money for payment of the tax received in hand; and that, further, after sale there is another tax of 1 per cent on gross receipts, which means being taxed on expenses as well as profits.

The power of the legislature to enact taxes includes the power to determine the rate that shall be applicable and courts will not interfere with this function of the legislature or its judgment in these matters, so long as the rate set is not so exorbitant as to take away all profit.

Further, this is not a tax on the seller or dealer, but on the consumer. This is a 10% tax on automobiles which, in the final analysis, is paid by the purchaser of the automobile. It is the identical rate as charged by the Federal government for the delivery of automobiles by retailers in the United States. But it is not a duplicated tax. The 10% tax is paid where the delivery of the automobile is made. If the Federal tax is applicable and is paid, a car brought into the Municipality is not subject to another 10% tax. Also, it is customary here, as in the United States, for the 10% tax to be added to the sales price of the automobile and, therefore, when sold, this tax on automobiles is collected by the dealer from the retail

51

purchaser. It is true that the dealer may have to pay this tax, along with the purchase price, before the automobile is sold, but it is then added to the retail price and has nothing to do with, or in no way reduces his profit on the automobile. Consequently, this tax cannot be considered confiscatory by the dealer as it does not take from him anything which belongs to him. He collects from the purchaser the full amount which is due the government and is not entitled to hold this amount or consider it part of his profits.

The 1% gross receipts tax, of which plaintiff complains is similar to the sales tax in many of the States and is lower than in most States, New York being 2% and Illinois 3%. Certainly, therefore, it is not exorbitant here at 1%.

█ - █ As to the charge that the tax is usurious, plaintiff contends that in addition to the penalty for non-payment, there is an interest charge of 1 per cent for every month or fraction thereof that the tax is not paid and that this is equivalent to an interest rate of 12% per annum in violation of the Municipality's Interest Law, ch. 21, Title II of the Code (1921; 11 V.I.C. § 951 et seq.), which sets 6% per annum as the legal rate of interest.

At first glance this might appear to be a valid charge, but upon a complete reading of the Trade Tax statute it will be found that the legislature clearly intended it to be a special statute with special provisions, notwithstanding any other legislative provision to the contrary. Section 17 makes it clear that wherever the trade tax law conflicts with other laws the provisions of this law shall be paramount, and there is no question that the legislature has the power to repeal its previous acts either in whole or in part.

It is also settled that the legislature has the power to set certain penalties for non-payment as well as for late payment of taxes. A legislature may provide for a high rate of interest on overdue payments to the government

and when such interest rates are above the legal interest rates established by law they may be regarded either as a penalty, where no penalty is otherwise provided or, as in this case, a special interest rate applicable to late payment of taxes. The legislature, which has the power to set the legal interest rate for any category of debts or payments, may treat taxes as a special category subject to special rates. It is therefore clear that the legislature here intended to place trade taxes in a special category and to set so high a rate of interest for late payment that the taxpayer would be induced to pay promptly the tax due and owing to the Municipality.

The Court, therefore, concludes that the attachment by the Municipality of plaintiff's bank account is valid. This does not, however, terminate the suit for the reason that the plaintiff still has a right to be heard upon the amount rightly due the Municipality and the case will be held open for this purpose.

Order may be drawn in accordance with this opinion.