**MILLER PROPERTIES, INC., Plaintiff**

**v.**

**THE GOVERNMENT OF THE VIRGIN ISLANDS,
KENNETH E. MAPP, Defendants**

Civil No. 287/1998

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

June 26, 2001

JAMES M. DERR, ESQ., St. Thomas, Virgin Islands, *Attorney for Plaintiff*

JOANNE E. BOZZUTO, ESQ., Department of Justice, St. Thomas, Virgin Islands, *Attorney for the Government of the Virgin Islands*

HODGE, *Judge*

## MEMORANDUM OPINION

(June 26, 2001)

Before the Court are cross-motions for summary judgment in this taxpayer's lawsuit, initiated pursuant to 5 V.I.C. § 80. The parties agree that there are no disputed issues of material fact and, since the only issues are questions of law, this case is an appropriate one for summary judgment. For the reasons set forth more fully below Plaintiff's Motion for Summary Judgment will be GRANTED IN PART.

## FACTS

The parties seek a determination of whether the Division of Corporations and Trademarks (Division), a division of the Office of the Lieutenant Governor of the Virgin Islands, is presently using a correct method of assessing the amount of franchise taxes due. The Virgin Islands Corporate Franchise Tax statute is found at 13 V.I.C. § 531 (a) which provides, in relevant part, that:

> Every corporation incorporated under the laws of the Virgin Islands ... shall pay to the Commissioner of Finance for the use of the Government of the Virgin Islands, a franchise tax of $1.50 for each thousand dollars of *capital stock used in conducting business in the Virgin Islands*. The minimum tax for any corporation ... however, even though no capital or capital stock is so used shall be $150.00. [Emphasis added].

According to the statutory language, Plaintiff asserts that the franchise tax must be calculated on the basis of the amount of issued and outstanding capital stock, that is the *amount paid to a corporation in return for the issuance of shares.* Thus, in the Complaint, Plaintiff asserts that the Government is wrongfully assessing the franchise tax on the basis of capital rather than on the amount paid for the capital stock. *Complaint,* ¶10. The Government apparently agrees that the tax must be assessed on the basis of the value of the capital stock, that is, what the shareholders paid for their shares. However, the issue is not so straightforward as it might first appear.

The Government's position is that capital stock includes the stated value of all classes of stock authorized, issued and outstanding (stated capital), and the amount of any paid-in capital in excess of stated value (additional paid-in capital). The Government would also include any amounts that are later added to the stated capital or additional paid-in capital. Thus, capital stock includes the full *amount paid to a corporation in return for the issuance of shares*, whether par or no par at the time of formation, plus amounts subsequently recorded as stated capital or paid-in capital.[1]

---

[1] Since the amount paid by shareholders generally "exceeds the value of the stock issued, this amount is reflected in two accounts on a corporation's balance sheets ... the 'capital stock account' which shows the par value of the stock issued, and (2) the

70

Therefore, the crux of the issue is whether the value of capital stock is the amount paid for stock, *excluding* additional paid-in-capital, or whether it is the amount paid for the stock, *including* additional paid-in capital. Put another way, the tax may be assessed in reference to the stock, without regard for its value, or, on the other hand, it may be assessed in reference to the value of the stock considered in light of the company's assets.

To highlight this distinction, the parties presented a telling example during oral argument before the Honorable Ive Arlington Swan. At that September 28, 1999 hearing, the Plaintiff contended that if you set up a corporation with 100 shares of $10 par value stock authorized then, the shareholder writes a check for $1,000 and is issued 100 shares of ten-dollar stock. However, if it turns out that the corporation needs additional capital, and the shareholder contributes more money, say another $99,000.00, receiving no additional stock, then that second contribution is not taxable. The value of the capital stock is simply the $1,000 stated capital—that is, *the amount that the shareholder paid for his shares.*

On the other hand, in the above scenario, the Government explained that it would want to know the total contribution of that shareholder, and would posit that the shareholder had contributed $100,000.00, taxable, in exchange for those shares of ten-dollar stock—or, using more formal nomenclature, the Government would tax *both* the stated capital ($1,000) and the capital surplus or additional paid-in capital ($99,000). Thus, the Government contends that $100,000.00 is really *the amount that the shareholder paid for his shares.*

## DISCUSSION

■ The Legislature of the Virgin Islands has the power to enact tax statutes and to prescribe therein the procedure for collection and enforcement; the courts cannot substitute their judgment for that of the Legislature. *Creque v. Shulterbrandt*, 121 F. Supp. 448, 3 V.I. 39 (D.V.I. 1954). The power to enact taxes includes the power to determine the rate that shall be applicable, and the courts will not interfere with this function of the legislature so long as the rate set is not exorbitant. *Creque v. Shulterbrandt*, 121 F. Supp. 448, 3 V.I. 39 (D.V.I. 1954). On the other

---

'paid-in-capital in excess of par' account which shows the rest of the amount paid." *See,* Defendant's Reply, at 1.

hand, the judiciary is charged with construing the statutory creations of the legislature and with applying the statutes to the facts of a given case. *Government of the Virgin Islands v. Zachry*, 24 V.I. 244 (Terr. Ct. 1989). If the Court can determine the legislative intent in enacting a statute using the traditional tools of statutory construction, then that interpretation must be given effect. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984).

Because the Court must construe the statute so as to give effect to the intent of the Legislature, it must look to the legislative history of the amendment when it is available, or to other indicia of intent. *Jeffers v. Meridian Engineering, Inc.*, 27 V.I. 105 (Terr. Ct. 1992). The history of the relevant statute, 13 V.I.C. § 531, is helpful both in setting out the issues before the Court and, in determining the intent of the Legislature with respect to the franchise tax.

The original franchise tax statute was enacted in the Virgin Islands in 1921, which provided:

> Every corporation incorporated under the laws of the Virgin Islands ... shall pay to the Commissioner of Finance for the use of the Government of the Virgin Islands, a franchise tax of $1.00 for each thousand dollars of *capital* used in conducting business in the Virgin Islands. The minimum tax for any corporation, however, even though it has no capital so used shall be $15.00. Code of St. Thomas and St. John, title II, ch. 31 § 5. [Emphasis added].

As set forth in this predecessor statute, the franchise tax was calculated on the basis of the total "capital used in conducting business in the Virgin Islands." Apparently, there was some disagreement regarding the definition of "capital" for the Attorney General Leon P. Miller, authored an opinion on this issue at the request of the Government on February 16, 1959.

In that opinion, Attorney General Miller reviewed the relevant authorities including *New Orleans City Gaslight Co. v. Board of Assessors*, 31 La. Ann. 475, 477 ("The terms 'capital' and 'capital stock' are in legal intendment synonymous.") and *Christensen v. Eno*, 12 N.E. 648, 649, 106 N.Y. 97 ("Strictly speaking, however, the 'capital stock' of a corporation is the money contributed by the corporators to the capital, and is usually represented by shares issued to subscribers of the stock on

the initiation of the corporate enterprise."). Having reviewed these authorities, Attorney Miller wrote:

> The above citations may be of assistance to you in determining the basis upon which you will assess the annual franchise tax. I believe you will be justified in using either or both. In most instances *you will probably elect to use "capital stock"* as a basis because of your limited facilities for determining capital. Op. Atty. Gen. 1959-5. [Emphasis added].

The Attorney General noted that it is difficult to determine the amount of "capital" and that, given the "limited facilities of the Government" it is simpler to use "capital stock" as a basis for assessing the tax. This is because it is often difficult to distinguish between capital and the property in which it is invested.

Therefore, three months later, on May 13, 1959 the Legislature amended § 531 with Act No. 404, section 1, which provides:

> Section 531 of Title 13 of the Virgin Islands Còde is amended by inserting after "capital" in the first sentence thereof, the word "stock"; and by inserting after "capital" in the second sentence thereof, the words "or capital stock."

Interestingly, this amendment was intended to *clarify*—rather than substantively change—the existing law, and the amendment was applied retroactively.[2]

In light of this history, the Government maintains that the terms 'capital stock' and 'capital' were intended to be interchangeable terms. In further support of that proposition, the Government has referred the Court to those cases relied upon in the Attorney General's 1959 opinion—that is, the way the terms were understood *at or near the time of the 1959 amendment.*[3] The Court agrees.

---

[2] Act No. 404 was "To Amend Title 13 of the Virgin Islands Code for the Purpose of Clarifying the Provisions Relating to the Computation of the Franchise Tax to be paid by Corporations." Act No. 404, 1959 Virgin Island Session Laws, 14 (May 13, 1959).

[3] *See, for example, People ex rel. Commercial Cable Co. v. Morgan*, 178 N.Y. 433, 70 N.E. 967 (NY 1904) (capital and capital stock are practically the equivalent of each other when considered as a basis of a franchise tax); *People ex rel. Tetragon Co. v. Sohmer*, 162 A.D. 433, 147 N.Y.S. 611 (N.Y. App. Div. 1914) (same);

The opinion of the Attorney General was apparently the driving force behind the 1959 amendment. It is indisputable that, based on the numerous authorities cited in his opinion letter, and brought to the attention of the government, the terms 'capital' and 'capital stock' were understood to be legally synonymous. Thus, one must conclude that the Legislature did not advocate changing to overall nature of the franchise tax. In addition, there is simply no evidence whatsoever that the Legislature intended to make a substantive change in the law; and, to the contrary, the amendment was explicitly referred to as a "clarification." This fact is further evidenced by the apparent total lack of discussion or debate surrounding its approval by the Legislature.

However, a little over a year later, then Attorney General Russell B. Johnson issued another opinion, providing:

> "Capital stock" in the sense of [13 V.I.C. § 531] means that amount paid to a corporation in return for the issuance of shares of stock, and such amount is equal to the payment for the capital stock plus that amount allocated to *surplus* in the *initial formation* of the company. 4 Op. Atty. Gen. 51 (1960). [Emphasis added].

Interestingly, this opinion letter seems to be the only place that capital stock is defined as being limited to the time of formation of the corporation. Perhaps more interestingly, this definition does not reflect the view of either party in this case, and apparently provides yet another possible interpretation.[4]

---

*People ex rel. Standard Oil Co. of New York v. Saxe*, 179 A.D. 721, 166 N.Y.S. 887, 889 (N.Y. App. Div. 1917) (the terms are practically equivalent); *Foster v. Stevens*, 63 Vt. 175, 22 A. 78 (Vt. 1891) (terms are synonymous); *Christensen v. Eno*, 106 N.Y. 97, 12 N.E. 648, 649 (N.Y. 1887) (terms are often used interchangeably); *People ex rel. Consolidated Ginseng Co. of America v. Kelsey*, 105 App. Div. 175, 93 N.Y. Supp. 369, *aff'd* 182 N.Y. 526, 74 N.E. 1123 (N.Y. App. Div. 1905) (terms are equivalent).

[4] Limiting the assessment of taxes to the time of 'initial formation' is in direct conflict with 13 V.I.C. § 100 which provides that those sums paid in "from time to time" shall also be considered. Further, the Court will not rely on this interpretation, because this opinion letter was written after the 1959 amendment and, therefore, does not shed light on the issue of this case—that is, it does not tell us much about what the Legislature intended the 1959 amendment to mean at the time that it was enacted.

The Government maintains that it has not departed from the 1960 interpretation, taxing stated capital as well as additional paid-in capital, explaining that it has used the same definition for assessing corporate franchise taxes for nearly forty years. *Opposition Memorandum*, at 16. However, since the Government previously argued that the 1959 amendment was not a substantial change in the law, and that, as a result, it is still proper to assess the franchise tax based on 'capital' (*i.e.* a legal synonym for 'capital stock') it appears that these two propositions are inconsistent.

This is because, unlike the 1960 Attorney General Opinion, which expressly considers surplus as part of capital stock, 13 V.I.C. § 100 provides a definition of capital that does not include surplus. To the contrary, the statute provides:

> The capital of any corporation having capital stock shall be an amount at least equal to the sum of *the aggregate par value* of all issued shares having par value, plus the aggregate amount of the purchase price received by the corporation for the issue of shares without par value, plus such amounts as, from time to time, by resolution of the board of directors, may be transferred thereto. *The excess,* if any, at any given time of the total net assets of the corporation over the amount so determined to be capital *shall be surplus.* 13 V.I.C. § 100.

The revision notes explain that the section "was designed to provide the manner for determining corporate capital when par value stock or no par value stock, or both are issued, and to define the term 'surplus'."

Therefore, the Court agrees with the Government that 'capital' and 'capital stock' are essentially interchangeable terms, and that the 1959 Legislature did not effect a substantive change in the law. The Court must stress, however, that the Legislature provided an unambiguous definition of capital which cannot be ignored. While the Division of Corporations and Trademarks may rely on a permissible, even reasonable, interpretation of the statute, that interpretation is not the meaning intended by the Legislature.[5]

---

[5] While the court is charged with interpreting the law, this matter may also be properly resolved by the Legislature. By seeking legislative action, such as an amendment *clarifying* the franchise tax statute, the government may resolve this issue conclusively. Franchise taxes may assessed in a variety ways; and choosing among

■ The definition of 'capital' appears in the Virgin Islands Code at 13 V.I.C. § 100, and is unambiguous. This definition is virtually identical to the definition traditionally associated with the more formal term 'stated capital'. *Compare*, 13 V.I.C. § 100 *with* BLACK'S LAW DICTIONARY, 6th Ed. at 143 (defining stated capital). Therefore, 'capital' is the "sum total of corporate stock" as defined by the Legislature in 13 V.I.C. § 100 and the term is interchangeable with the term 'capital stock' according to Territorial law. Capital stock means the amount *fixed* in the articles of incorporation to be paid-in, and, "surplus ... constitutes no part of the 'capital stock'" of a corporation." 14A FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 6971 (Perm. Ed. 1991).

■ To the contrary, "surplus" means, "amounts paid to a corporation in excess of the par value of stock, generally referred to as additional paid-in capital." *See*, BLACK'S LAW DICTIONARY, 6th Ed. at 144. This definition is, consistent with the concepts of 'capital' and 'surplus' as set forth in 13 V.I.C. § 100, which expressly limits 'capital' to the amount of the stated value of the stock (*i.e.* par or otherwise) and excludes surplus. It is also consistent with 13 V.I.C. § 101 which provides:

> In any case in which the law requires that the par value of shares of capital stock of the corporation be stated in any certificate or paper, it shall be stated in respect of any shares without par value that such shares are without par value and *wherever the amount of the authorized or issued capital stock of the corporation is required to be stated* and the corporation shall have any shares without par value, *it shall be sufficient to state* the total number of shares authorized or issued, as the case may be, the *number* and *par value* of shares having a par value and the number of shares without par value. 13 V.I.C. § 101.

This section 101 instructs a company on "how to meet the requirements of any law [such as the franchise tax statute] requiring the corporation to state the ... amount of its authorized or issued capital

---

the different approaches is a job more appropriately left in the hands of the Legislature. Therefore, if the Virgin Islands Legislature wishes to tax 'additional paid-in capital" it is free to do so. For example, Louisiana calculates its franchise tax based on "capital stock, surplus, undivided profits, and borrowed capital." *See*, LA. R.S. 47:601 (1998); *but see*, IOWA CODE § 490.122 (Iowa merely collects a flat $30.00 annual fee.).

stock." *See*, Revision Notes at 13 V.I.C. § 101. This statute expressly provides that a corporation must state the number of shares and the par value of those shares or that they are without par value. It does not require a company to state what may have been paid above and beyond par or the stated value of the shares. In maintaining a coherent body of corporate law, statutes must be construed as to be "congruous with other related statutes." *Estate of Charles Redfield Vose*, 256 F. Supp. 558 (D.V.I. 1966).

■ Therefore, although the Court acknowledges that the price paid for newly issued stock generally exceeds par value, this additional amount, insofar as it meets the statutory definition of surplus, is not taxable as 'capital stock' because the Legislature essentially intended to continue taxing "capital," as evidenced by the 1959 letter of the Attorney General and the retroactive effect of the statute—and, according to 13 V.I.C. § 100, surplus is not capital.[1] Accordingly, Plaintiff's Motion for Summary Judgment shall be GRANTED with respect to its claim for declaratory relief as is consistent with this opinion.

■ According to this interpretation of the franchise tax statute, Plaintiff asserts that it is entitled to a refund of those taxes which were improperly assessed. A state or territory must provide its taxpayers with a means of objecting to the taxes imposed. U.S. CONST. Amend. 14. However, the Legislature has provided that a corporation's failure to pay its franchise tax will result on the dismissal of an action brought by it unless it pays its back taxes. 13 V.I.C. § 533(a); *Meyers v. Manner Corp.*, 17 V.I. 608 (D.V.I. 1980). Therefore, it has been held that payment under duress, followed by a suit in this court is sufficient to meet the due process requirement. *Creque v. Shulterbrandt*, 121 F. Supp. 448, 3 V.I. 39 (D.V.I. 1954). Accordingly, the Government recognizes

---

[1] The Government notes that the Plaintiff's interpretation would convert the franchise tax into a "nominal license fee." Opposition to Plaintiff's Motion for Summary Judgment at 7. Interestingly, the statutory predecessor, with substantially the same provisions, was in fact called a license fee. *See*, Bill No. 155 to Amend Chapter 31, Title II of the Code of Laws of the Municipality of St. Thomas and St. John (June 28, 1950); Chapter 31, Title II, section 4 of the Code of Laws of the Municipality of St. Thomas and St. John.

the right of a taxpayer to contest the amount of taxes assessed in this court after paying such taxes.[2]

■ However, before this Court considers the matter of a refund in this case, Plaintiff should first seek a proper 'assessment' from the Division in light of this opinion. If that amount is then contested, Plaintiff may seek review of the Division's assessment in this court. In fact, it appears that the Division agrees that the Plaintiff is entitled to a refund for at least some of the years at issue in this case. Therefore, the matter is REMANDED to the Division of Corporations for a determination of taxes due or to be refunded not inconsistent with this opinion.

---

[2] The Government maintains that it does not any longer contest Plaintiff's right to seek relief in light of the absence of a statutory authorization recognizing the right of corporations to contest the amount of franchise taxes assessed and seek refunds of taxes paid. Further, the Court need not address the constitutionality of a statute where there is some other ground for making a determination in the case at hand. *Christopher v. Tuitt*, 20 V.I. 88 (Terr. Ct. 1983). Thus, the Court can ensure that questions of constitutional law are given the full attention of the adversarial parties and are central to the controversy.