**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**SOLOMON JOHNSON, Defendant**

Criminal No. 206/2002

Territorial Court for the Virgin Islands

Division of St. Croix

May 18, 2004

GABRIEL VILLEGAS, ESQ., Assistant Attorney General, Virgin Islands Department of Justice, St. Thomas, U.S. Virgin Islands, *Attorney for the Plaintiff*

JEFFREY MOORHEAD, ESQ., C.R.T. Brow Building, St. Croix, U.S. Virgin Islands, *Attorney for Defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

(May 18, 2004)

In this case, the Court must determine a question of first impression in this jurisdiction: whether section 272(c)(3) of title 3 of the Virgin Islands Code[1] grants absolute immunity from prosecution to a person who produces evidence pursuant to a subpoena issued by the Department of Licensing and Consumer Affairs ("DLCA"). For the following reasons, the Court determines it does not.

## FACTS

On or about November 20, 2001, Jamila Russell ("Russell"), an employee of the DLCA whose duties included issuing and renewing licenses, took leave from her job. During her absence, her supervisor, Lisa Davis ("Davis"), uncovered irregularities while assisting a contractor seeking to renew a business license. Davis was unable to locate any

---

[1] The statute provides:

> No person shall refuse to comply with a subpoena of the Department to produce the required evidence, or refuse to answer any questions in connection with any study or investigation, or refuse to comply with a judicial order so issued on the grounds that the testimony or evidence required may incriminate him or subject him to criminal prosecution or that it may cause his dismissal or removal from his employment. A person sworn or examined before the Department shall not be held to answer criminally or be subject to any penalty or forfeiture for any fact or act upon which he is required to testify. Any statement made or paper produced by such witness shall not be competent evidence in any criminal proceeding against the witness.

V.I. CODE ANN., tit. 3, § 272(c)(3).

records for the customer and noticed that Russell's signature appeared on the computer system, indicating that she was the individual who issued the license. Further inquiry on the department's part revealed similar cases[2] where contractors were issued licenses unsupported by any record showing that they met the requirements for those licenses. In each instance, Russell's computer signature appeared as the one who issued the licenses.

On December 12, 2001, Defendant, a contractor, was served with a subpoena to appear at the DLCA the following morning and provide information related to an ongoing investigation. The subpoena instructed Defendant to produce the original copy of his business license. Defendant appeared on December 13, 2001 and produced his 2000 and 2001 business licenses. He was examined and interviewed. In his statement, prepared by James Kitson, District Counsel to the DLCA,[3] defendant stated that he took the construction contractor's exam on two occasions and never passed. He further stated that he was approached by a co-worker, Rafael, who offered to get him a contractor's license in exchange for $2,500.00. Defendant claimed he paid Rafael $1,000.00 and received a contractor's license two days later. Defendant further testified that Rafael relocated to New York before Defendant could pay him the remaining $1,500.00.

On April 22, 2002, Abbigail Gunther, an investigator for the Office of the Inspector General, contacted Defendant and instructed him to reappear before the DLCA on April 23, 2002. The Defendant complied and on April 23, 2002 gave a second sworn statement, in which he admitted he was not truthful about the identity of the individual who sold him the contractor's license. He then properly identified the person who sold him the license as Claytus Prevost.

In June 2002, the Government filed an Information[4] charging Defendant with Conspiracy to File or Record False Instrument,

---

[2] This inquiry gave rise to several criminal cases filed in this Court: *Government of the Virgin Islands v. Jamila Russell*, Crim. No. 104/2002; *Government of the Virgin Islands v. Peter John*, Crim. No. 203/2002; and *Government of the Virgin Islands v. Michael Dujon*, Crim. No. 204/2002.

[3] Kitson's title is District Counsel of the DLCA. Although he holds the title he is not a member of any bar.

[4] The Information alleges that on or about May 1999 to August 2000, Defendant was offered a construction contractor license in exchange for money, that the license

Conspiracy to Make Fraudulent Claims Upon the Government, Filing or Recording a False Instrument and Making a Fraudulent Claim Upon the Government. On August 13, 2002, Defendant filed a Motion to Dismiss, arguing that section 272(c)(3) of title 3 of the Virgin Islands Code clearly and unambiguously grants him absolute immunity from any criminal prosecution because his testimony was compelled. The Government opposed the Defendant's motion, contending that the statute confers use immunity, not absolute immunity.

## DISCUSSION

 Immunity is generally characterized as either transactional immunity, also known as absolute immunity, or derivative use immunity, also known as use immunity. *U.S. v. Quatermain Drax*, 613 F.2d 38, 40 (3d Cir. 1980). Transactional immunity "accords full immunity from prosecution for the offense to which the compelled testimony relates." *Kastigar v. United States*, 406 U.S. 441, 452 (1972). Derivative use immunity, on the other hand, prohibits the use of compelled testimony or any evidence derived from that testimony against the witness in a criminal prosecution. *Id.* at 452-453. Under derivative use immunity, the witness may be prosecuted for crimes about which he testifies, if the Government proves it has other evidence that is derived from a source wholly independent of the compelled testimony. *Quatermain Drax*, 613 F.2d at 40 (3d Cir. 1980). The Court now looks more closely at section 272(c)(3) to determine whether it confers the protection of transactional immunity or derivative use immunity.

### I. Title 3, Section 272(c)(3) of the Virgin Islands Code Is Ambiguous On Its Face.

 A court must not interpret a statute that is clear and unambiguous on its face. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). Only ambiguous statutes should be subject to statutory interpretation. *United States v. American Trucking Ass'ns*, 310 U.S. 534 (1940). Ambiguity exists when reasonable persons can interpret a statute in two or more different ways. *Barnes v. Cohen*, 749 F.2d 1009 (3d Cir. 1984). In this

was issued by the DLCA, that Defendant paid the money and accepted the license, and that Defendant knew the license was falsely issued to him, as he had not complied with the DLCA requirements.

case, although section 272(c)(3) grants immunity to a person testifying pursuant to a subpoena issued by the DLCA, it is not clear whether such immunity is transactional or derivative. The statute may be interpreted as granting transactional immunity in that it states that a person sworn or examined "shall not be held to answer criminally or be subject to any penalty or forfeiture", which suggests that such person is absolutely immune from any criminal penalty. Another interpretation may be that the statute grants derivative use immunity, because it states that "any statement made or paper produced" cannot be used against the witness in a criminal proceeding, which implies that a person may be subject to prosecution for the offense to which his testimony relates, but that his compelled testimony may not be used against him. Because it is not entirely clear what type of immunity section 272(c)(3) confers, the Court deems the statute ambiguous on its face. It is this ambiguity which leads the Court to interpret the subject statute.

## II. Statutory Interpretation of Section 272(c)(3).

The role of the courts in interpreting an ambiguous statute is to give effect to the legislative intent of the statute. *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998). To do so, the Court must look to the legislative history, or to other indicia of intent. *Miller Properties, Inc. v. Government of the Virgin Islands*, 44 V.I. 68, 72 (Terr. Ct. 2001); *see also, Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 627 (1993) (stating, "[W]e turn, as we would in the usual case of textual ambiguity, to the legislative purpose as revealed by the history of the statute, for such light as it may shed.").

In this instance, the legislative history sheds no light on what the Virgin Islands Legislature ("Legislature") intended when it passed section 272(c)(3). The history merely reveals that section 272(c)(3) was enacted on June 24, 1987 as part of the Government Reorganization and Consolidation Act of 1987, which restructured the various departments, divisions, and bureaus of the Virgin Islands Government. 1987 V.I. Sess. Laws 5265; *See also, Virgin Islands Board of Education v. Monsanto*, No. 628/1998, 1991 Lexis, 25 (D.V.I. March 18, 1991) (unpublished opinion). Beyond the Government Reorganization and Consolidation Act of 1987, neither party cited any legislative history and the Court's own research failed to reveal any history indicating legislative intent. The

369

Court must therefore look to other indicia of intent, such as the statutory scheme of section 272(c)(3), as well as the history of immunity statutes. NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 45.05 (6th ed. 2001).

## Context of Statute

Statutes are to be read in their entirety because they are passed as a whole, not in parts or sections. *Massachusetts v. Morash*, 490 U.S. 107 (1989); *see also*, NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 45.06 (6th ed. 2001). Consequently, the Court must consider section 272(c)(3) in its context, rather than in isolation. V.I. CODE ANN., tit. 1, § 42 (1995); *see also, Food and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (stating "[A] reviewing Court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.").

Section 272 of Title 3 of the Virgin Islands Code describes the authority of the DLCA. Section 272(c)(1) authorizes the DLCA to promote and enforce laws affecting the interests of consumers. V.I. CODE ANN., tit. 3, § 272(c)(1) (1995). To enable the effective performance of this duty, section 272(c)(1) empowers the DLCA to conduct investigations and issue subpoenas requiring the appearances of witnesses and the production of data or information. *Id*. This section further empowers the DLCA to administer oaths and receive testimony. *Id*. The DLCA may also invoke the power of the Court to enforce a subpoena. V.I. CODE ANN., tit. 3 §272(c)(2) (1995). Section 272(c)(3) forbids any person who has been subpoenaed from refusing to answer any questions or produce any evidence in connection with a DLCA investigation on the basis that the testimony or evidence will incriminate the individual or subject him to criminal prosecution. V.I. CODE ANN., tit. 3, § 272(c)(3) (1995). The statute then provides immunity to any person who is required to testify or produce evidence in accordance with the subpoena. *Id*.

The words of section 272(c)(3), considered in context, provide no clear indication of the legislative intent behind this immunity statute. Since the legislative history of section 272(c)(3) also fails to indicate

legislative intent, the Court now turns, as it must, to the history of immunity statutes, in deciding how to construe and apply the statute.

## B. History of the Immunity Statutes

The seminal Supreme Court case *Kastigar v. United States*, 406 U.S. 441 (1972) provides a thorough review of the history of immunity statutes. Immunity statutes are deeply rooted in American jurisprudence and serve as a means of balancing the Government's legitimate need to enforce various statutes against a need to protect the individual citizen's right against self-incrimination. *Kastigar v. United States*, 406 U.S. 441, 445-446 (1972); *see also, Murphy v. Waterfront Commission*, 378 U.S. 52, 80 (1964) (stating that government must have the power necessary "to secure information necessary for effective law enforcement."). The existence of immunity statutes recognizes the fact that many crimes would not be solved without the testimony of some who are themselves involved in the crimes, making these statutes essential for the investigation of such misdeeds. *Kastigar*, 406 U.S. at 446-447.

Before 1970, transactional immunity statutes were the custom for numerous federal and state immunity statutes. *Id.* at 451-452. The prevalence of transactional immunity statutes created a problem for law enforcement, as prosecutors were reluctant to grant immunity to potential targets of criminal investigations fearing they would never be able to prosecute those targeted. *Pillsbury v. Conboy*, 459 U.S. 248, 252-253 (1983). In 1970, Congress reformed the federal immunity laws and enacted a federal immunity statute codified in section 6002 of title 18 of the United States Code.[5] The new federal immunity statute provided for derivative use immunity rather than transactional immunity. 18 U.S.C. § 6002 (1970). Two years later, in 1972, the Supreme Court reviewed the constitutionality of title 18 section 6002 and held that derivative use immunity is coextensive with the Fifth Amendment right against self-

---

[5] The statute provides in relevant part that "no testimony or other information compelled under the order [an order issued by a person presiding over a proceeding to a witness refusing to testify or provide other information in that proceeding] (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case … ." 18 U.S.C. § 6002 (1970).

incrimination.[6] *Kastigar*, 406 U.S. 450. The Court reasoned that derivative use immunity leaves the witness and the Government in substantially the same position as if the witness had claimed the Fifth Amendment privilege. *Kastigar*, 406 U.S. at 462. The Court further reasoned that a grant of immunity need not confer broader protection than that required by the Fifth Amendment, and found that transactional immunity grants a witness considerably more protection than the Fifth Amendment requires. *Kastigar*, 406 U.S. at 453. Moreover, in a case decided in the same term as *Kastigar*, the Supreme Court, referring to *Kastigar* while reviewing a New Jersey law, reiterated that when a jurisdiction seeks to compel testimony, it need not "grant protection greater than that afforded by the privilege against self-incrimination in order to supplant the privilege and compel testimony." *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 476 (1972). It is therefore evident that *Kastigar* and its review of immunity statutes established use immunity as the preferred means of balancing the needs of law enforcement with that of the individual's right against self-incrimination.

## III. Section 272(c)(3) Grants Derivative Use Immunity.

It is important to note that section 272(c)(3) was enacted after the Supreme Court held in *Kastigar* that derivative use immunity is commensurate with the scope of the protection of the Fifth Amendment privilege against self-incrimination and is sufficient to compel testimony over a claim of the privilege. Indeed, the holding in *Kastigar* had been firmly embedded in American jurisprudence for fifteen years by the time the Legislature enacted section 272(c)(3) in 1987. Thus, any necessary research done in drafting section 272(c)(3) would have included a review of *Kastigar*. It is therefore doubtful that the Legislature would grant transactional immunity to a witness responding to a DLCA subpoena when *Kastigar* and years of precedent had established that such expansive constitutional protection was unnecessary.

---

[6] An individual citizen's right against self-incrimination is guaranteed by the Fifth Amendment which provides in relevant part that "[n]o person shall be ... compelled in any criminal case to be a witness against himself ... ." U.S. CONST. AMEND. V. This Amendment is made applicable to the Virgin Islands by virtue of the Revised Organic Act. 1954 Rev. Org. Act § 3; prec. V.I. CODE ANN., tit.1 (1995) *See* 48 U.S.C. § 1406(g).

Moreover, there is an equally important reason why the Legislature could not have intended to confer transactional immunity when it enacted section 272(c)(3). When the Legislature enacted the Government Reorganization and Conciliation Act of 1987, it granted the DCLA extensive powers to investigate consumer concerns under its jurisdiction. The reason for this is clear: the primary task of the DLCA is to protect the consumer. V.I. CODE ANN., tit. 3, § 272(a)(1) (1995). This Court doubts that the Legislature would have granted such extensive investigatory powers to the DLCA, only to then limit the agency by leaving it without the power to seek the prosecution of those responsible for, or involved in, wrongdoing. It is also questionable the Legislature would grant transactional immunity to a witness responding to a subpoena issued by the DLCA when the purpose of the DLCA is to protect consumers by promoting the enforcement of consumer protection laws and a grant of transactional immunity would preclude the enforcement of consumer protection laws and defeat the very purpose for which the agency was created.

To protect consumers, the DLCA must have the power to gather all required information from those potentially implicated in violating DLCA rules and regulations, without infringing on the constitutional rights of the subpoenaed witness. Since section 272 was enacted to protect consumer interests and section 272(c)(3) specifically protects a witness subpoenaed by the authority charged with protecting those interests, the two interests found in section 272 must be balanced. "The dilemma in balancing these competing interests centers on the type of immunity which can best provide the public with the information to which it is entitled in order to ferret out criminal activity and at the same time protect the rights of the witness being forced to testify under compulsion." *Commonwealth v. Swinehart*, 664 A.2d 957, 968-969 (Pa. 1995). With this goal in mind, the Court will now seek to balance the competing interests in section 272.

Transactional immunity extends much further than the privilege against self-incrimination and allows persons to escape responsibility for their criminal behavior. Granting a witness transactional immunity renders him immune from prosecution, places the witness and his interests in a better position than the DLCA, and ultimately hurts the consumer. On the other hand, granting a witness use immunity protects him from prosecution for his testimony, but does not free him from the

373

consequences of his actions, if the prosecuting authority can prove the conduct by means other than the immunized testimony. *Kastigar v. United States*, 406 U.S. 441 (1972); *see also, Commonwealth v. Swinehart*, 664 A.2d 957, 968 (Pa. 1995). This result, in addition to protecting the subpoenaed witness, also protects the consumer by deterring other individuals from committing similar misdeeds and by promoting the enforcement of consumer protection laws. This must be the result the Legislature intended when it enacted section 272(c)(3) in 1987.

■ Transactional immunity offers a measure of protection greater than the privilege against self-incrimination because the witness is granted immunity from prosecution for the related offense. *Swinehart* at 968. In light of the purpose for which the DLCA was created, and since a grant of immunity need not confer broader protection than that required by the Fifth Amendment, the Court concludes that the Legislature did not, in granting immunity in section 272(c)(3), intend to grant transactional immunity to an individual compelled to testify before the DLCA. The Court therefore holds that section 272(c)(3) of title 3 of the Virgin Islands Code, enacted in 1987, confers only derivative use immunity to a person who testifies or produces evidence in compliance with a subpoena issued by the DLCA.

## CONCLUSION

Section 272(c)(3) grants immunity to a witness responding to a DLCA investigation but does not clearly and unambiguously grant transactional or use immunity from compelled testimony. Use immunity best strikes the important balance between the interests of the DLCA to protect the consumer by investigating consumer-related concerns and the right of the witness against self-incrimination. It also provides protection which is equal to the Fifth Amendment protection against self-incrimination. Consequently, this Court concludes the Legislature intended to grant use immunity, rather than transactional immunity, when it enacted section 272(c)(3) in 1987.