**GOVERNMENT OF THE VIRGIN ISLANDS, Appellants,**

v.

**AT & T OF THE VIRGIN ISLANDS, INC. and Caneel Bay, Inc., Appellees.**

**Government of the Virgin Islands, Appellant,**

v.

**Miller Properties, Inc., Appellee.**

**Nos. CIV.A.2001–195, CIV.A.2001–193.**

District Court, Virgin Islands, Appellate Division, D. St. Thomas and St. John.

July 24, 2003.

---

Douglas J. Juergens, AAG, St. Thomas, VI, for Appellants.

Henry L. Feuerzeig, Chad C. Messier, St. Thomas, VI, for Appellees AT & T and Caneel Bay.

James M. Derr, David E. Nichols, St. Thomas, VI, for Appellee Miller Properties.

Before: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and DARRYL DEAN DONOHUE, Judge of the Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.

## OPINION

PER CURIAM.

## I. FACTUAL BACKGROUND

### A. AT & T and Caneel Bay

On February 24 and February 25, 1998, the Government of the Virgin Islands, through Lorna Webster ["Webster"] as the director of the Division of Corporations and Trademarks, sent Caneel Bay letters informing that an examination of its franchise tax reports indicated that Caneel Bay had failed to include additional paid-in capital in its calculation of franchise taxes owed pursuant to 13 V.I.C. § 531(a). In the February 24 letter, Webster demanded that Caneel Bay pay within thirty days $1,190,135.85 representing its redetermined franchise taxes, plus penalties and interest from 1976. This amount increased to $1,285,302.50 in the February 25 letter addressed to Caneel Bay. On May 19, 1998, AT & T received a similar letter from Webster informing that it owed $484,010.79 in redetermined franchise taxes, penalties and interest from 1982. Neither AT & T nor Caneel Bay paid these additional taxes within the proscribed thirty days and on December 1, 1998, they both received letters from Webster threat-

ening them with dissolution and prosecution if they failed to pay by December 10. Although the government apparently did not follow through with these threats when AT & T and Caneel Bay again failed to pay the redetermined franchise tax bills by December 10, it did refuse to issue both corporations certificates of good standing.

On December 31, 1998, AT & T and Caneel Bay jointly sued the Government seeking (1) a declaratory judgment that the Government's reinterpretation of the term "capital stock" failed to comply with necessary statutory procedural prerequisites and was contrary to the clear language of 13 V.I.C. § 531(a), (2) a declaratory judgment that the Government lacked the authority to promulgate retroactive rules and that the retroactive application violated their procedural and substantive due process rights, (3) a declaratory judgment that the government was barred from collecting a portion of the redetermined franchise tax bills because of the six-year statute of limitations found in 13 V.I.C. § 533, and (4) a permanent injunction prohibiting the government from collecting these redetermined franchise taxes.

### B. Miller Properties

The facts of Miller Properties differ slightly from those of AT & T and Caneel Bay in that Miller Properties from 1989 to 1998 calculated its franchise taxes according to the form provided by the Government, which included both paid-in capital stock and additional paid-in capital. After discovering in early 1998 that the Government was mandating that the tax be calculated in a manner inconsistent with section 531(a), i.e. franchise tax based on capital stock, Miller Properties filed suit on March 30, 1998 against the Government

seeking a return of overpayments as well as an injunction prohibiting the Government from calculating and collecting franchise taxes other than in accordance with Virgin Islands law.

## II. PROCEDURAL BACKGROUND

On June 26, 2001 the Territorial Court granted AT & T and Caneel Bay, and Miller Properties in a separate opinion, partial summary judgment on their respective complaints. In particular, the trial judge noted that although the Legislature failed to provide a definition of "capital stock", it did provide a definition of "capital" in 13 V.I.C. § 100. Finding these terms to be synonymous, the trial court held that, for purposes of section 531(a), "capital stock" referred solely to stated capital and not additional paid-in capital or surplus capital. Accordingly, the trial court remanded the matter back to the Division of Corporations and Trademarks for a reassessment of AT & T, Caneel Bay, and Miller Properties's respective franchise taxes. The government promptly appealed the trial court's findings.

## III. DISCUSSION

### A. Jurisdiction and Standard of Review

 This Court has jurisdiction to review final judgments and orders of the Territorial Court in all civil matters. *See* 4 V.I.C. § 33.[1] This Court's review of the trial court's application of legal precepts and statutory construction is plenary. *See In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir.2000); *Dennenberg v. Monsanto*, 168 F.Supp.2d 494, 495 (D.V.I.App.Div.2001); *Government of Virgin Islands v. John*, 159 F.Supp.2d 201, 205 (D.V.I.App.1999).

---

1. *See* Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2002), *reprinted* *in* V.I. CODE ANN. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2002) (preceding V.I. CODE ANN. tit. 1).

## B. Territorial Court Did Not Err in Basing Definition of "Capital Stock" on 13 V.I.C. § 100

In the 1921 predecessor to section 531(a), the District of St. Thomas and St. John required "[e]very corporation having capital stock [to pay an annual licensing fee of] one dollar for each thousand dollars of stock used in conducting business in this District, provided that the minimum fee is fifteen dollars for any corporation." 1921 Code of St. Thomas & St. John, Title II, ch. 31, § 4. In 1950, this statute was amended to increase the license fee to $1.50 for each thousand dollars of stock. In 1957, the Legislature amended section 531 to read "a franchise tax of $1.50 for each thousand dollars of capital used in conducting business in the Virgin Islands. The minimum tax for any corporation, however, even though no capital or capital stock is so used, shall be $22.50." Two years later, the Legislature again amended section 531; this time to provide for "a franchise tax of $1.50 for each thousand dollars of capital stock used in conducting business in the Virgin Islands. The minimum tax for any corporation, however, even though no capital or capital stock is so used, shall be $22.50." The question now before this Court is what the Legislature intended to tax as a franchise tax under section 531.

■ Statutory interpretation begins with the language of the statute itself. *See Smith v. Magras,* 124 F.3d 457, 462 (3d Cir.1997) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (noting that the "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.")). In finding that the Legislature intended to base the Territory's franchise tax solely on a company's stated aggregate value of its issued capital stock ["stated capital"], the trial court relied on the definition of "capital" as provided by the Legislature in 13 V.I.C. § 100 and on the doctrine of *in pari materia.* The trial court did not err in so doing.

■ As noted earlier, the Legislature in 1957 amended section 531 to provide "a franchise tax of $1.50 for each thousand dollars of *capital* used in conducting business in the Virgin Islands. The minimum tax for any corporation, however, even though no capital or capital stock is so used, shall be $22.50." 13 V.I.C. § 531(a) (1957) (emphasis added). At the same time, the Legislature defined what it meant by capital:

> The *capital* of any corporation having *capital stock* shall be an amount at least equal to the sum of the aggregate par value of all issued shares having par value, plus the aggregate amount of the purchase price received by the corporation for the issue of shares without par value, plus such amounts as, from time to time, by resolution of the board of directors, may be transferred thereto. The excess, if any, at any given time of the total net assets of the corporation over the amount so determined to be capital shall be surplus.

13 V.I.C. § 100 (emphasis added). According to the Code, section 100 "was designed to provide the manner for determining corporate capital when par value stock or no par value stock, or both are issued, and to define the term 'surplus'". *Id.,* Revision notes. Since section 531(a) was amended and section 100 added at the same time, we read the two together as expressing the Legislature's clear intent that corporate franchise taxes in the Virgin Islands are to be calculated on the stated sum of a corporation's issued par value and no par value stock, and not on its surplus.

Nothing in the Legislature's amendment to section 531(a) in 1959 to clarify that "capital" meant "capital stock" evidenced any intention to change the basis for calculating the franchise tax from the amount paid for the company's par and no par value stock. Indeed, the title to the amendment to section 531(a) was "To Amend Title 13 of the Virgin Islands Code for the Purpose of Clarifying the Provisions Relating to the Computation of the Franchise Tax to be paid by Corporations." Act No. 404 of May 13, 1959, § 1, Sess. L.1959. The Legislature's use of the term "clarifying" corroborates our conclusion that the addition of the word "stock" made no substantive change to section 531. We have no reason to differ with the trial judge's conclusion that a 1959 opinion by the Office of the Attorney General was "the driving force behind the 1959 amendment." *See Miller Props. v. Government of the Virgin Islands*, 44 V.I. 68, 74, 2001 WL 1464770 (Terr.Ct.2001). The Office of the Attorney General in 1959 had opined that the terms "capital" and "capital stock" were legally synonymous and interchangeable. *See* 4 Op. Att'y Gen.1959-5 (1971).[2] Therefore, we will affirm the decision of the trial court.

## IV. CONCLUSION

The Territorial Court did not err in defining "capital stock" using the definition of "capital" as found in 13 V.I.C. § 100. Accordingly, we will affirm the trial court's grant of partial summary judgment in fa-

vor of appellees. We will also remand this matter back to the Territorial Court for a decision on Count III of the complaint of AT & T and Caneel Bay that is consistent with our ruling in *Virgin Islands v. Innovative Communications Corp.*, 215 F.Supp.2d 603 (D.V.I.App.Div.2002).[3]

## ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

**ORDERED** that the Territorial Court's Memorandum and Order of June 26, 2001 is **AFFIRMED**; and it is further

**ORDERED** that *AT & T of the Virgin Islands & Caneel Bay, Inc. v. Government of the Virgin Islands*, Civ.App. No.2001–195, is **REMANDED** for a determination on Count III of their complaint consistent with this Court's opinion in *Virgin Islands v. Innovative Communications Corp.*, 215 F.Supp.2d 603 (D.V.I.App.Div.2002).

---

2. As we have already found, the 1957 version of section 531(a) and the simultaneous definition in section 100 were clear and unambiguous. It was the flawed reasoning of the Attorney General in 1959 that injected any confusion between "capital" and "capital stock". The opinion ignored the clear and distinct meaning of "capital" at the time and instead chose to offer various other defini-

tions of the terms "capital" and "capital stock".

3. In *Government of the Virgin Islands v. Innovative Communications Corp.*, 215 F.Supp.2d 603 (D.V.I.App.Div.2002), this Court affirmed the Territorial Court's decision that the government was barred by a six-year statute of limitations from collecting a portion of Innovative's redetermined franchise tax bill.