**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**
**v.**
**AT&T OF THE VIRGIN ISLANDS, INC. and CANEEL BAY, INC.,**
**Appellees**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**
**v.**
**MILLER PROPERTIES, INC., Appellee**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**
**v.**
**BERNE CORPORATION, Appellee**

D.C. Civil App. No. 2006-149; D.C. Civil App. No. 2006-105; D.C. Civil App. No. 2006-150

District Court of the Virgin Islands

Division of St. Thomas and St. John

April 17, 2009

RICHARD S. DAVIS, ESQ., St. Thomas, USVI, *For the Appellant.*

CHAD C. MESSIER, ESQ., JUSTIN K. HOLCOMBE, ESQ., St. Thomas, USVI, *For AT&T of the Virgin Islands, Inc., Caneel Bay, Inc. and Miller Properties, Inc., Appellees.*

JAMES M. DERR, ESQ., St. Thomas, USVI, *For Berne Corporation, Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and SANCHEZ, *Judge of the District Court of the Eastern District of Pennsylvania, sitting by designation.*

## MEMORANDUM OPINION

(April 17, 2009)

The Government of the Virgin Islands (the "Government") appeals from the Superior Court of the Virgin Islands' awards of summary

judgment in favor of AT&T of the Virgin Islands, Inc. ("AT&T"), Caneel Bay, Inc. ("Caneel Bay"), Miller Properties, Inc. ("Miller") and Berne Corporation ("Berne"). For the reasons that follow, we will dismiss this appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties' familiarity with the background of these cases is presumed. We therefore recite only those facts necessary for our disposition.

Title 13, Section 531(a) of the Virgin Islands Code ("Section 531(a)") requires every corporation either incorporated in the Virgin Islands or qualified to do business in the Virgin Islands to pay the Government "a franchise tax of $1.50 for each thousand dollars of capital stock used in conducting business in the United States Virgin Islands." V.I. CODE ANN. tit. 13, § 531(a). Section 531(a) does not define "capital stock." These appeals arise out of a disagreement over the meaning of that phrase.[1]

AT&T, Caneel Bay, Miller and Berne (together, the "Appellees") are corporations either incorporated under Virgin Islands law or qualified to do business in the Virgin Islands. In 1998 and 1999, they brought separate lawsuits against the Government in the Superior Court.[2] Among other

---

[1] According to the Government, capital stock for franchise tax purposes is calculated by adding the value of all par-value stock, paid-in capital in excess of par value and amounts later added through a reorganization. In the Appellees' view, capital stock is determined by multiplying the number of shares issued with par value by the par value of such shares, and adding to that figure the purchase price paid for no-par-value shares.

[2] Different circumstances gave rise to the Appellees' various lawsuits.

AT&T and Caneel Bay received letters in 1998 from the Virgin Islands Division of Corporations and Trademarks, stating that AT&T and Caneel Bay had failed to include additional paid-in capital in computing their capital stock for franchise tax purposes. The letters demanded back franchise taxes based on the corporations' respective recalculated capital stock amounts plus penalties and interest. After fruitless negotiation efforts, the Division again sent letters to AT&T and Caneel Bay, warning them to pay the back franchise taxes or face possible dissolution and prosecution. AT&T and Caneel Bay thereafter sued the Government in a single lawsuit.

For many years, Miller and Berne, unlike AT&T and Caneel Bay, calculated their respective franchise taxes on the basis of their capital stock plus paid-in capital, in conformity with the Government's definition of capital stock. At some point in time, Miller and Berne came to believe that the Government's definition conflicted with Virgin Islands law. They therefore recalculated their franchise taxes based on their capital stock alone and excluding

things, they sought declarations that the Government's definition of capital stock for franchise tax purposes was improper.

In three separate opinions, the Superior Court granted partial summary judgment for the Appellees. The court noted that although Section 531(a) does not define capital stock, the Virgin Islands Code does provide for the determination of a corporation's "capital" at Title 13, Section 100 ("Section 100"). *See* V.I. CODE ANN. tit. 13, § 100. Reasoning that "statutes must be construed as to be congruous with other related statutes[,]" *Miller Props. v. Gov't of the V.I.*, 44 V.I. 68, 77 (V.I. Terr. Ct. 2001) (quotation marks and citation omitted), the court applied Section 100's definition and held that additional paid-in capital is not to be included in the definition of capital stock for the purposes of Section 531(a). Accordingly, the Superior Court ordered the Division of Corporations and Trademarks to reassess the Appellees' franchise taxes in conformity with Section 100's definition of "capital."

The Government timely appealed. We affirmed, holding that the Superior Court had not erred in applying Section 100's definition of capital to Section 531.[3] *Virgin Islands v. AT&T of the V.I., Inc.*, 274 F. Supp. 2d 731 (D.V.I. App. Div. 2003). We also remanded the cases to the Superior Court on Count Three in AT&T and Caneel Bay's complaint. In Count Three, AT&T and Caneel Bay sought a declaration that actions for the collection of franchise taxes and penalties were subject to six-year and two-year limitations periods, respectively. We directed the Superior Court to make a determination on that issue consistent with our opinion in *Virgin Islands v. Innovative Communications Corp.*, 215 F. Supp. 2d 603 (D.V.I. App. Div. 2002).[4]

On remand, the Superior Court declared that a six-year statute of limitations governs franchise tax enforcement actions and a two-yearlimitations period applies to actions to collect penalties for the nonpayment or underpayment of franchise taxes. The court additionally

---

paid-in capital. When the Government sent Miller and Berne notices of deficiency, they separately sued the Government.

[3] AT&T, Caneel Bay and Miller were parties in the first appeal. Berne was not a party.

[4] The Government appealed our ruling. The Third Circuit dismissed that appeal for lack of jurisdiction, reasoning that because we remanded the case to the Superior Court, the proceedings were ongoing. *AT&T v. Gov't of Virgin Islands*, 102 Fed. Appx. 259, 260 (3d Cir. 2004) (unpublished).

ordered the Government to reassess the Appellees' respective franchise tax liabilities over the past six years in accordance with the definition of capital stock previously articulated by that court and upheld on appeal in this Court.

The Government thereafter redetermined AT&T's and Caneel Bay's franchise taxes. AT&T and Caneel Bay agreed with the Government's redetermination. In April 2005, the Superior Court awarded AT&T a refund of $299,322.68 and Caneel Bay a refund of $50,058.08.

Miller's redetermination proceeded less expeditiously. After the Government submitted an initial redetermination, Miller moved for an order to show cause why the Government should not be held in contempt for allegedly failing to recalculate Miller's franchise taxes in conformity with the Superior Court's previous ruling. In October 2004, the Superior Court agreed with Miller that the Government's recalculation was incorrect. The court ordered the Government to complete a new redetermination within thirty days. Miller subsequently petitioned the Superior Court for another order to show cause after the Government again allegedly failed to comply with the court's previous ruling. In April 2006, the Superior Court awarded Miller a franchise tax refund in the amount of $56,784.27.[5]

These timely appeals followed. We consolidated the appeals because they raise identical issues. The Government submits five main issues for our review: (1) whether Section 100 should be read in conjunction with Section 531(a); (2) whether the merger of multiple corporations into a single corporation affects the capital stock of the resulting corporation; (3) whether the Superior Court should have deferred to the Government's interpretation of Virgin Islands law; (4) whether the Superior Court erred in its recalculation of the Appellees' franchise taxes; and (5) whether the Superior Court erred in finding that a six-year statute of limitations governs franchise tax enforcement actions.

---

[5]    The Superior Court also ordered a redetermination of Berne's franchise tax liability. The record does not otherwise reflect the aftermath of our ruling with respect to Berne.

## DISCUSSION

### A. Jurisdiction

We have jurisdiction to review final judgments and orders of the Superior Court. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005).[6]

### B. Standard of Review

Our review of the Superior Court's application of legal precepts and statutory construction is plenary. *Mapes Monde, Ltd. v. A.H. Riise Gift Shop, Inc.*, 46 V.I. 297, 337 F. Supp. 2d 704, 707 (D.V.I. App. Div. 2004); *Dennenberg v. Monsanto*, 168 F. Supp. 2d 494, 495 (D.V.I. App. Div. 2001); *Virgin Islands v. John*, 159 F. Supp. 2d 201, 205 (D.V.I. App. Div. 1999).

## III. ANALYSIS

Before we reach the issues the Government submits for our review, we must, as a threshold matter, consider the Appellees' argument that this appeal is barred by the "law-of-the-case" doctrine. According to the Appellees, the Government's appeal is really a repackaged version of its previous appeal to this Court.

"Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (quotation marks and citation omitted), *cert. denied*, 129 S. Ct. 1032, 173 L. Ed. 2d 293 (2009); *see also Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 (3d Cir. 2003) ("Under the law-of-the-case doctrine, once an issue has been decided, parties may not relitigate that issue in the same case.") (quotation marks and citation omitted). "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony v. United Way of America*, 254 F.3d 403, 410 (2d Cir. 2001) (citation omitted). "This rule of practice promotes the finality

---

[6]    The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988) (quotation marks and citation omitted); *see also Disimone v. Browner*, 121 F.3d 1262, 1266 (9th Cir. 1997) ("No litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time.") (quoting *Gindes v. United States*, 740 F.2d 947, 949 (Fed. Cir. 1984)).

■ The doctrine "does not restrict a court's power but rather governs its exercise of discretion." *Afr. v. City of Phila. (In Re Phila. Litigation)*, 158 F.3d 711, 718 (3d Cir. 1998). Thus, there are three broad exceptions to the law-of-the-case doctrine. First, "the doctrine does not apply in the extraordinary circumstance when the earlier decision was clearly erroneous and would create manifest injustice." *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008) (quotation marks and citation omitted). Second, "[r]econsideration of a previously decided issue may [also] be appropriate . . . when the record contains new evidence." *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003) (citations omitted). This exception applies "only if the new evidence differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision." *Id.* (citation omitted). Third, the doctrine does not apply if "a supervening new law has been announced." *UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 397 n.4 (3d Cir. 2003) (citation omitted).

The Appellees argue that the law-of-the-case doctrine applies here because, in their view, the Government is essentially asking us to reconsider discrete issues we have already considered and decided. They assert that there has been no supervening law or new evidence to warrant reconsideration. They further contend that the Government has made no showing that our previous conclusions were clearly erroneous or would result in manifest injustice.

The Government's opening brief does not mention the law-of-the-case doctrine. Instead, the Government devotes one and one-half pages to that issue in its reply brief. The Government concedes that "the questions of the meaning of the term 'capital stock' as used in [Section 531(a)] . . . and the statute of limitations that should be applied to the collection of past due franchise taxes were before this Court" in the previous appeal. [Reply

Br. of Appellant at 4.] Despite that concession, the Government does not discuss whether reconsideration of our previous decision is warranted because of new evidence or a change in the law. Rather, the Government claims that manifest injustice will result absent reconsideration. Other than stating, in wholly conclusory fashion, that this appeal raises questions from the previous appeal "in a broader context," [*id.*], the Government makes no effort to explain the nature of that alleged injustice.

In affirming the Superior Court's decision regarding the definition of capital stock in Section 531(a), we began, as we always do, "with the language of the statute itself." *Virgin Islands*, 274 F. Supp. 2d at 734 (citation omitted); *see also Alaka v. AG of the United States*, 456 F.3d 88, 104 (3d Cir. 2006) ("Perhaps the most fundamental principle of statutory construction is that words in a statute must be given their ordinary meaning whenever possible.") (quoting *Okeke v. Gonzales*, 407 F.3d 585, 593 (3d Cir. 2005)).

Noting that Section 531(a) does not define capital stock, we turned to the Legislature's amendment of that provision in 1957. That amendment provided that "a franchise tax of $1.50 for each thousand dollars of capital used in conducting business in the Virgin Islands. The minimum tax for any corporation, however, even though no capital or capital stock is so used, shall be $22.50." V.I. CODE ANN. tit. 13, § 531(a) (1957). At the time the Legislature enacted this amendment, it also provided, in Section 100, a definition of "capital":

> The capital of any corporation having capital stock shall be an amount at least equal to the sum of the aggregate par value of all issued shares having par value, plus the aggregate amount of the purchase price received by the corporation for the issue of shares without par value, plus such amounts as, from time to time, by resolution of the board of directors, may be transferred thereto. The excess, if any, at any given time of the total net assets of the corporation over the amount so determined to be capital shall be surplus.

V.I. CODE ANN. tit. 13, § 100.

The Revision Notes to Section 100 explain that Section 100 "was designed to provide the manner for determining corporate capital when par value stock or no par value stock, or both are issued, and to define the term 'surplus' ". *Id.*, Revision Notes. We reasoned that because the

Legislature amended Section 531(a) and added Section 100 at the same time, the two provisions should be read "together as expressing the Legislature's clear intent that corporate franchise taxes in the Virgin Islands are to be calculated on the stated sum of a corporation's issued par value and no par value stock, and not on its surplus." *Virgin Islands*, 274 F. Supp. 2d at 734. Accordingly, we concluded that the trial court "did not err in defining 'capital stock' using the definition of 'capital' as found in [Section 100]." *Id.* at 735.

■ The Government offers us no persuasive reason to disturb our previous conclusion, and we perceive none. *See, e.g., Rodwell v. Pepe*, 324 F.3d 66, 72 (1st Cir. 2003) ("The law of the case doctrine ordinarily calls for us to honor our previous assessment and there is no valid reason to do otherwise here.") (internal citation omitted). Accordingly, to the extent the Government invites us to revisit the definition of capital stock, we decline to do so.

■ We likewise do not reach the question whether the trial court erred in not deferring to the Government's interpretation of capital stock. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Although we did not explicitly address that issue in our previous opinion, we resolved it by implication because such a resolution was necessary to our conclusion. *See Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 901 (9th Cir. 1997) (noting that a subsequent panel is "allowed to draw necessary inferences from the prior adjudication in order to determine whether an issue was actually decided"); *see also, e.g., Disimone*, 121 F.3d at 1268 (finding that although a previous panel's order denying a motion "did not explicitly address any of the arguments made in that motion[,] . . . we may assume that the panel decided against all of the arguments presented in [that] motion because such a determination was necessary to deny the motion").

■ ■ We recognize that "[w]here there is substantial doubt as to whether a prior panel actually decided an issue, the later panel should not be foreclosed from considering the issue." *UA Theatre Circuit*, 316 F.3d at 398. Here, however, we have no such doubt. The Government expressly raised the issue of *Chevron* deference and both parties fully briefed it in the previous appeal. *Chevron* deference does not apply where a court finds a statute to be unambiguous. *See Swallows Holding, Ltd. v. Comm'r*, 515 F.3d 162, 170 (3d Cir. 2008) ("Under *Chevron*, if the

statutory language is clear and unambiguous, our inquiry ends and the plain meaning of the statute governs the action."). In applying Section 531(a)'s plain language in the previous appeal, we found that provision to be unambiguous. *Chevron* therefore had no place in our analysis then, and nothing convinces us that it should factor into our reasoning now.[7]

▮▮ To the extent the Government urges us to review the Superior Court's application of our ruling in the previous appeal — that is, the Superior Court's specific determinations about the appropriate refund due each of the Appellees — we again must refrain. The Government's opening brief contains not even a passing allusion to that issue. Instead, the Government refers fleetingly to "the question whether the court-ordered method of determining the amount of franchise taxes . . . is legally correct." [Reply Br. of Appellant at 5.] Because that issue is inadequately developed on the record before us and was raised for the first time in the Government's reply brief, it is waived. *See Pell v. E. I. DuPont De Nemours & Co.*, 539 F.3d 292, 309 n.8 (3d Cir. 2008) (finding an argument waived where it was asserted only in a reply brief); *Skretvedt v. E.I. DuPont de Nemours*, 372 F.3d 193, 202-03 (3d Cir. 2004) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.").

▮ In what appears to be a last-ditch effort to compel us to review an appeal that differs only superficially from one we have already considered and decided, the Government argues that "it has never waived its sovereign immunity with respect to the underpayment of franchise taxes." [Br. of Appellant at 29.] The Government did not explicitly argue that

---

[7] We additionally note that "*Chevron* deference applies to an agency's statutory interpretation 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.' " *Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 504 (3d Cir. 2008) (quoting *United States. v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)). Here, the Government has made no effort to persuade us that, under Virgin Islands law, an arm of the Territory's executive branch is due the same deference where the Virgin Islands Legislature delegates rule-making authority. *See, e.g., Anderson v. Spear*, 356 F.3d 651, 669 (6th Cir. 2004) ("In order to demonstrate that such deference is due to the Kentucky Registry of Election Finance, the agency must, at the very least, establish under Kentucky law that the legislature intends ambiguities or gaps to be treated as delegations to administrative agencies. The agency makes no attempt to do so, and accordingly any claim to *Chevron* deference must fail.").

point in the previous appeal. We, however, addressed it. We directed the Superior Court, on remand, to impose a six-year limitations period on franchise tax enforcement actions in accordance with our decision in *Government of the Virgin Islands v. Innovative Communications Corp.*, *supra.*

In *Innovative,* the Government sought back franchise taxes and penalties from certain corporations. The corporations contended that the Government's enforcement action was barred by a six-year statute of limitations but remitted the requested back taxes anyway. Thereafter, the corporations sued the Government in the Territorial Court, alleging that the Government's methodology in calculating franchise taxes was flawed. The trial court subsequently granted the corporations' motion for summary judgment, concluding that the Government was time-barred from collecting franchise taxes more than six years due and that the Government had waived its sovereign immunity by enacting Title 13, Section 533(c)(2) of the Virgin Islands Code.[8]

The Government appealed. We agreed with the trial court that the Government "had waived its sovereign immunity in matters involving the underpayment of corporate franchise taxes." *Innovative*, 215 F. Supp. 2d at 607. We also found no error in the trial court's determination that a six-year limitations period governs franchise tax enforcement actions. *See id.* at 610-11. Accordingly, we affirmed the trial court's decision in all respects.

---

[8]    Section 533(c) provides:

(c) The Lieutenant Governor upon determination that any corporation has neglected for a period of one year to pay its annual franchise tax, shall —

(1) if the delinquent corporation is a domestic corporation, make a notification upon the records of his office that such corporation is dissolved and it shall thereupon be dissolved and the directors of such corporation shall hold title to the property of the corporation as trustees for its stockholders and creditors to be disposed of under appropriate court proceedings; or

(2) if the delinquent corporation is a foreign corporation, make a notification upon the records of his office that the authority of such corporation to do business in the United States Virgin Islands is revoked and it shall thereupon be revoked; provided, that no domestic corporation shall be *dissolved, and no foreign corporation shall have its authority to do business in the Territory revoked, for the nonpayment of franchise taxes which the Government is barred from recovering by the statute of limitations set out in Title 5, section 31, of this Code.*

V.I. CODE ANN. tit. 13, § 533(c)(2) (emphasis supplied).

Given our unambiguous resolution in *Innovative* of both the appropriate statute of limitations on franchise tax enforcement actions and the issue of the Government's waiver of sovereign immunity, as well as our application of those principles in the previous appeal in this matter, we have no trouble concluding that the Government is foreclosed from raising these issues anew in this appeal.[9]

## IV. CONCLUSION

For the foregoing reasons, this appeal will be dismissed. An appropriate judgment follows.

---

[9] To the extent the Government asserts that the Superior Court erroneously applied our holding on these issues, that assertion is unpersuasive. The Superior Court correctly imposed a six-year limitations period on franchise tax enforcement actions per our directive in the previous appeal and our decision in *Innovative*.